## Fugate v. Commonwealth.

(Decided March 25, 1924.)

### Appeal from Perry Circuit Court.

1. Criminal Law—Sufficiency of Affidavit as to Each Witness Should be Determined when Continuance Denied.—Every question bearing on the sufficiency of the affidavit as to each witness should be determined when continuance is denied, on condition that the accused may read the affidavit as the deposition of the absent witnesses, thus leaving for future determination only questions of relevancy and competency, and part of an affidavit cannot be

excluded on the trial on the ground that the affidavit failed to show due diligence.

2. Witnesses—Return Necessary to "Compulsory Process" to which Accused is Entitled Under Constitution.—Constitution, section 11, guaranteeing to an accused the right to have compulsory process for obtaining witnesses in his favor, is not satisfied by merely placing warrants of arrest for witnesses in the hands of an officer, but it is contemplated that the officer shall make diligent efforts to serve the process, and the court should see either that the process is served or cannot be served for a good and sufficient reason, and to this end should require the officer to make a return at least before the evidence is completed.

3. Homicide—Accused should be Permitted to Explain Flight.— While the flight or concealment of the accused after the commission of a homicide may be shown as furnishing a presumption of guilt, the accused should be permitted to explain his flight or concealment by showing that he apprehended violence at the hands of persons who would be likely to attack him.

4. Criminal Law—Ruling on Evidence Held Not to be Commended.— While trial courts have a broad discretion as to the time and manner of the introduction of evidence, where defendant was asked if he and others did not say and do certain things in the presence of a certain person, and he answered in the negative, and such other person was called in rebuttal, and the same questions calling for an answer of yes or no being propounded to him, he answered in the affirmative, it was not good practice for the court to decline to permit defendant to be recalled for interrgoation in regard to the matter, the evidence in question consisting of statements and conduct on the part of accused and others a short time before the homicide, and being substantive in character.

5. Homicide—General Threat to Kill Some One Admissible.—A general threat to kill some one is admissible to show general malice and a purpose to injure or kill some one of which the deceased became the victim.

6. Homicide—Threat to Kill a Third Party Held Inadmissible and Prejudicial.—In a homicide case, proof of a threat against a particular third person, growing out of a particular transaction and conditioned on the failure of that person to do a particular thing, was inadmissible, and its introduction in evidence was prejudicial error.

7. Criminal Law—Statute Providing for Separate Trial Mandatory. —Criminal Code of Practice, section 237, providing that if two or more defendants be indicted jointly for a felony, any defendant is entitled to a separate trial, is manadatory, and the court is without power to refuse a separate trial when demanded.

8. Homicide—Conspiracy Instruction Proper Whether Trial Separate or Joint.—A defendant jointly indicted with others cannot defeat a charge of conspiracy by demanding a separate trial under Criminal Code of Practice, section 237, and if the indictment and evi-

dence be sufficient, a conspiracy instruction is proper whether the trial be separate or joint.

9. Criminal Law—Where Court Refuses to Instruct on Conspiracy, Matter Not for Discussion Before Jury.—Where the court refuses to instruct on a conspiracy, that question is eliminated from the case and is not a matter for discussion before the jury, and it was highly improper for Commonwealth's counsel, with the apparent sanction of the court, to argue to the jury that the evidence was sufficient to show a conspiracy, but that the court could not instruct thereon because of the action of accused in obtaining a separate trial under Criminal Code of Practice, section 237.

FAULKNER, STANFILL & FAULKNER for appellant.

FRANK E. DAUGHERTY, Attorney General, and MOORMAN DITTO and CHARLES F. CREAL, Assistant Attorneys General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Sol Noble was shot and killed in Perry county on October 2, 1922. Grover Fugate, Jake Fugate, his brother, and Pot Napier were jointly indicted for the crime. On a separate trial Grover Fugate was found guilty and his punishment fixed at death. From the judgment based on the verdict this appeal is prosecuted.

Appellant and the deceased both lived on Leatherwood creek in Breathitt county, four or five miles apart. Some years prior to the homicide appellant killed the son of the deceased. He was convicted and sentenced to the penitentiary, but before his term expired he was pardoned by the Governor. He returned to his old home on Leatherwood, and during the next two years it does not appear that there was any trouble between him and the deceased. On the day of the homicide, a religious meeting of some kind was being held at a church on Grapevine creek, in Perry county. Appellant and deceased both attended the meeting, but at different times. Appellant says that he left home early that morning to look after some cattle, and had been directed by his father to go by the church, and if his father was not there to come on up the creek. He reached the church about nine or ten o'clock in the morning, remained there until about noon and then started up the creek. At that time Pot Napier and others were traveling the road in a wagon. The deceased rode up to the wagon and shook hands with Pot Napier. At that time Grover Fugate arrived and said, "Sol, will you shake hands with me?" The deceased said,

"Yes, God damn you, I will shake hands with you and kill you the next minute." They then separated and went in different directions, appellant continuing up the road and stopping at Shade Davidson's. Later the deceased passed appellant and went to the home of Frankie Miller, which was located near the road. Not long after that, Jake Fugate, appellant's brother, came to Frankie Miller's. Going into the house Jake Fugate sat down on the lap of the deceased, put his arms around him and asked the deceased if he wouldn't kiss him. After this he returned to the road, where appellant and Pot Napier had arrived in the meantime. A short time after the arrival of appellant, Boone Duff went into the house of Frankie Miller and invited the deceased to go home with him. The deceased agreed to go, and they started towards the road for that purpose. According to the witnesses for the Commonwealth, deceased was unarmed, and as he came up to his mule, appellant, who was on the other side, reached around or under the mule's head and shot him four times. When the first shot was fired, Boone Duff, who was in the rear, pulled his pistol and ran to deceased. On the other hand, the testimony for appellant was to the effect that as the deceased approached appellant he pulled his pistol and some one said, "Look out, Boozer" (meaning appellant). Appellant turned, and seeing deceased approaching him with a drawn pistol, fired four shots as rapidly as he could. There was further evidence that after the shooting Boone Duff picked up the pistol of deceased. This, however, was denied by Duff and others who claimed that the only pistol which Duff had was the one which he owned and which he drew about the time the first shot was fired.

When the case was called for trial on the 19th day of the January term, 1923, appellant filed an affidavit for a continuance on account of absent witnesses. The attorney for the Commonwealth demurred to the sufficiency of the affidavit and motion for continuance. The demurrer was overruled and the continuance denied, with the understanding that the affidavit be read unconditionally as the deposition of the absent witnesses. Thereafter the entire affidavit was read as a part of the evidence for the defense, but on motion of the Commonwealth the court excluded all of the evidence of Andy Allen and Oscar Allen, who testified as to threats made by the deceased against appellant, not on the ground that it was irrelevant or incompetent, but presumably on the ground that

the affidavit failed to show due diligence. This is not the proper practice. Every question bearing on the sufficiency of the affidavit as to each witness should be determined when the continuance is denied upon condition that the accused may read the affidavit as the deposition of the absent witnesses, thus leaving for future determination only questions of relevancy and competency. Not only is the accused entitled to know in advance whether the evidence of any particular absent witness is to be excluded entirely in order that he may renew his efforts to have the witness present, but he should not be placed in the embarrassing position of having portions of the affidavit withdrawn after the affidavit has been read to the jury.

On motion of appellant a special bailiff to the counties of Breathitt and Wolfe was appointed and warrants of arrest for the witnesses mentioned in the affidavit for continuance were placed in his hands for execution, but he never reported any action thereunder to the court. The Constitution guarantees to the accused the right "to have compulsory process for obtaining witnesses in his favor." Constitution, section 11. This provision is not satisfied by merely placing warrants of arrest for witnesses in the hands of an officer. It contemplates that the officer shall make diligent efforts to serve the process, and the court should see either that the process is served or can not be served for a good and sufficient reason, and to this end should require the officer to make a return at least before the evidence is completed.

On cross-examination appellant was asked by the attorney for the Commonwealth why he stayed out all night on the creek and did not come to Hazard immediately and surrender himself. He replied that he was afraid he would meet up with "some of them" and have further trouble, as they were out in the hills dodging. On redirect examination he was asked who was out scouting. He replied that it was Sol Noble's boys and two of his grandsons. To this evidence the court sustained an objection, whereupon appellant offered to prove by the witness the names of the parties who were out scouting and of whom he was afraid, and avowed that the witness would answer truthfully that it was Bud Noble, Beecher Noble and Soldier Noble, one of them being a son and the other two grandsons of the deceased. While the flight or concealment of the accused after the commission of the homicide may be shown as furnishing a presumption of guilt, the accused should be permitted to explain his flight or con-

cealment by showing that he apprehended violence at the hands of persons who would be likely to attack him. Garman v. Commonwealth, 183 Ky. 455, 209 S. W. 528; Robertson's Criminal Law and Procedure, section 242. Of course, the circumstances may be such as to afford but little ground for his fears, but that is a matter for the jury to decide.

On cross-examination, appellant, Pot Napier and Jake Fugate, were each asked if he and the others did not say and do certain things in the presence of Harlan Neace, and they answered in the negative. Thereafter Neace was called in rebuttal, and the same questions calling for an answer of yes or no being propounded to him, he answered in the affirmative. Later on, appellant, Pot Napier and Jake Fugate were called in rebuttal and interrogated in regard to the matters testified to by Neace, but the court declined to permit them to answer on the ground that they had already testified. While trial courts have a broad discretion as to the time and manner of the introduction of evidence, the practice pursued in this case is not to be commended. The evidence in question consisted of statements and conduct on the part of appellant and of Pot Napier and Jake Fugate in his presence a short time before the homicide, and was substantive in its character. That being true, it was admissible in chief and no foundation of any kind was necessary. Had it been offered in chief, Neace would have been asked to say what the witnesses said and did in his presence, and the witnesses would have been permitted to testify in rebuttal with the proper advantage of the last say on the question. As it was, however, this advantage was given to the Commonwealth, with a further advantage of having Neace answer yes or no to leading questions instead of giving his own account of what occurred in his presence. Robinson v. Commonwealth, 178 Ky. 557, 199 S. W. 28.

On his direct examination Jesse Neace, a witness for the accused, testified that some time before the homicide he met the deceased, who stated that while he was shaking hands with Pot Napier, Boozer (Grover Fugate) stepped up and asked him if he would shake hands with him, whereupon he said, "Yes, by God, shake hands with a man and kill him too." On cross-examination he was permitted to testify that later on he met appellant, who seemed to be "pretty harsh about something," and claimed that he (witness) owed him $50.00, and said, "If you don't get that up for me, I am going to kill you." In

overruling appellant's motion to exclude this testimony, the court stated in the presence of the jury that it was admissible to show the state of mind the defendant was in, "if, in the judgment of the jury it does throw any light on that part of the defendant's mind as to whether or not he was in a bad state of mind, or in a good humor." It is the rule that a general threat to kill some one is admissible to show general malice and a purpose to injure or kill some one of which the deceased became the victim. Pursuant to this rule, the following threats made by the accused have been admitted: "I want to kill a man so G— d— bad that I don't know what to do." Hendrickson v. Commonwealth, 147 Ky. 298, 143 S. W. 993. "Boys, stay in town tonight, I am going to kill some d— man." Brooks v. Commonwealth, 100 Ky. 194, 37 S. W. 1043. Here the threat was not a general threat to kill some one. It was a threat against a particular person other than the accused, growing out of a particular transaction, and conditioned on the failure of that person to do a particular thing. It did not show appellant's state of mind towards the deceased or towards a class of which the deceased was a member or towards mankind in general. It did not serve to establish general malice, but tended only to show special malice towards a particular individual concerning a transaction with which the deceased had no connection and its admission was prejudicial error.

While arguing the instructions, one of the attorneys for the Commonwealth called attention to the fact that no instruction on conspiracy had been given by the court. He then said to the jury that the reason the court did not instruct on conspiracy was because the defendants had severed their trial, and, turning upon appellant and his counsel, said that there was only one man on trial, and that, therefore, the court could not instruct on conspiracy. He also added that if the defendants had been tried together on the same evidence, the court would have instructed on conspiracy, but could not do so because Grover Fugate alone was on trial, and the other defendants, Pot Napier and Jake Fugate, were not on trial. To this statement appellant objected, whereupon the court said to the jury: "I have given the law in this case, and I will give the law in other cases as they come up." To this ruling of the court appellant excepted. Thereupon the attorney for the Commonwealth continued to argue to the jury that a conspiracy was proven, but that no conspiracy instruction was given because of the conduct of

the defendants in severing their trial. Appellant again objected, but the court restated his position given above, to all of which appellant excepted. The Code provides that if two or more defendants be indicted jointly for a felony, any defendant is entitled to a separate trial. Criminal Code, section 237. The section is mandatory, and the court is without power to refuse a separate trial when demanded. It was never intended, of course, that a defendant jointly indicted with others could defeat a charge of conspiracy by demanding a separate trial. If the indictment and evidence be sufficient, a conspiracy instruction is proper whether the trial be separate or joint. Where the court refuses to instruct on conspiracy, that question is eliminated from the case, and is not a matter for discussion before the jury. Therefore, it was highly improper for counsel, with the apparent sanction of the court, to argue to the jury that the evidence was sufficient to show a conspiracy, but that the court could not instruct thereon because of the action of appellant in obtaining a separate trial. That this line of argument was prejudicial there can be no doubt. Not only was the statement of law incorrect, but the statement carried with it the imputation that appellant had been guilty of misconduct that operated to the disadvantage of the Commonwealth, whereas he had only exercised a statutory right and had done nothing that changed or affected the rights of the Commonwealth.

Judgment reversed and cause remanded for a new trial consistent with this opinion.