## Collins v. Commonwealth.

(Decided January 15, 1929.)

350

FAULKNER & FAULKNER for appellant.

J. W. CAMMACK, Attorney General, and SAMUEL B. KIRBY, JR., Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Reversing.

Willie Collins was indicted for the murder of Otis Stout. On the trial of the case he was found guilty of manslaughter, and his punishment fixed at 21 years' imprisonment. He appeals.

There is a coal camp in Perry county about a mile below the town of Krypton. Willie Collins lived there with his wife and two children. His father-in-law and his wife occupied the house with them. About 2 o'clock on the day in question Otis Stout appeared at the store of Clark Campbell at Krypton. He had whisky with him, and offered Campbell some. Campbell did not take any, and he then went from the store to the home of Jim Gilkerson. Jim's wife, Lil Gilkerson, was there, but Jim was away. He stayed there two or three hours with her, drinking. About dark he and she started down to the coal camp. When they got there, she undertook to call her father over the river to come for her, but she could not make him hear. She then went to the home of Collins, which was near by. A few minutes after she came

in Stout followed her into the house. She says that he knocked, and that Mrs. Collins let him in and gave him a chair; that he sat down in the chair, put his hat on his knee, and soon fell asleep. Mrs. Gilkerson left. Mrs. Collins and her mother followed her, and some minutes later Willie Collins, who had gone out to buy groceries, came in with the groceries. One witness for the commonwealth heard him say this as he entered: "Wake up, buddy." The next thing was what one witness describes as a noise and another as a "lumberment." This was followed by four shots of a pistol. Collins then went to a neighboring house and told them that he had killed Stout. They went to the house and found the chair turned over and Stout lying on the floor next to the bed, dead.

The proof for the commonwealth was to the effect that there were four wounds in Stout's head, two entering at the back of the skull and coming out at the mouth; two in the front of the head, which did not come out. Nobody testified as to what took place in the house, except Collins. He said that when he came in he asked Stout, "Where are the folks?" that Stout then arose with the chair and struck him with it; that Stout then fell over on the floor, and reached for his pistol, saying: "Jim, you S. B., I am going to kill you," and, when he had his pistol about half out of his pocket, Collins drew his pistol and shot four times, two of the balls striking Stout in the head in front and coming out at the back of his head. The proof by Mrs. Collins and her mother was, in substance, that Stout opened the door and walked in without being invited at all or their knowing that he was there; that then he took the seat in front of the fire, saying nothing, and that they became afraid of him, and the mother testifies that, while he was sitting there, she went out and came back up on the porch for something, and he then snapped the pistol at her. She told Mrs. Gilkerosn that she was not going to remain there with that man, and that Mrs. Gilkerson said: "He is a wild cat's kitten. If Jim Gilkerson knew Otis Stout was with me he would shoot my brains out."

There was other evidence tending to show that Mrs. Gilkerson and Stout were both drinking, and that as they came along the railroad from Krypton she had her arm around him. That he was very drunk is undisputed. Collins, as the proof for him shows, did not know him;

there was no bad feeling between them. There had never been any trouble between them in any way. Stout's pistol was sticking out of his pocket about half drawn when other persons entered the room, and the chair was lying on the floor.

The commonwealth proved by its witnesses that, when Collins got to the neighboring house, he used these words: "He will not call anybody else a G. D. S. B.," and that this was what he said. Collins introduced several witnesses who testified that he did not use these words, and he then offered to prove by these witnesses what he did say at that time. The court refused to allow the witnesses to testify to what Collins did say. This was error; the commonwealth, having introduced a part of the conversation, the defendant was entitled to show all that he said at that time, for some of the words might be very misleading if all of the words used at the time were not told. The jury might get a very false impression of what he meant. The rule is well settled that, where the commonwealth introduces part of a conversation, the defendant may show all that he said in that connection at that time.

The exclusion of this evidence was very prejudicial to the defendant under the avowals as to what the witnesses would have said. Cornelius v. Com., 15 B. Mon. 545, and Powers v. Com., 110 Ky. 409, 61 S. W. 735, 63 S. W. 976, 22 Ky. Law Rep. 1807, 53 L. R. A. 245; Louisville Times Co. v. Lancaster, 142 Ky. 122, 133 S. W. 1155; 22 C. J. p. 413, sec. 497. The commonwealth introduced four witnesses who testified, in substance, that there were four wounds in Stout's head—two entering at the back of the head and two entering on the top of the head. The proof for Collins was to the effect that Stout was shot only twice, and that the balls which entered at the top of the head came out at the back. After the defendant had closed his testimony, the court allowed the commonwealth in rebuttal to introduce further proof showing that the balls entered at the back of the head and came out at the front. This was error. It was incumbent upon the commonwealth to introduce its whole proof in chief, and, having introduced four witnesses in chief on this subject, it could not hold back other witnesses so as to have the last tag on the question. Fugate v. Com., 202 Ky. 514, 260 S. W. 338, and cases cited. The instruction of the court on self-defense did not clearly define

the defendant's rights, and, in fact, did not give the jury a proper basis, or, in fact, any basis by which to determine intelligently his right of self-defense. On another trial the court will give the jury this instruction:

"Although the jury believe from the evidence, beyond a reasonable doubt, that the defendant shot and killed deceased, yet if the jury believe from the evidence that at the time the defendant so shot and killed deceased, he had reasonable grounds to believe, and in good faith did believe, that the deceased was then and there about to inflict upon him death, or some great bodily harm, and that to shoot deceased was necessary, or seemed to him, in the exercise of a reasonable judgment, to be necessary, in order to protect himself from said danger, real, or to the defendant apparent, you should find the defendant not guilty, on the ground of self-defense and apparent necessity."

Appellant insists that, as he was in his own house and asasulted by a stranger there, the jury should have been told that he was not bound to retreat, and had a right to stand and defend himself. But that idea is expressed in the above instruction which gives him the right to protect himself from the danger, real or, to him. apparent. In other words, under this instruction the jury should have acquitted him, if what he did was apparently necessary for his self-protection, and this is all the instruction that he is entitled to under his own version as to what took place in the room.

On the whole case the defendant is entitled to a new trial.

Judgment reversed, and cause remanded for further proceedings consistent herewith.