## Tibbs v. Commonwealth.

(Decided January 12, 1932.)

J. B. WALL for appellant.

J. W. CAMMACK, Attorney General; BASIL P. COOPER, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Charlie Tibbs, who was indicted for murder, appeals from the judgment convicting him of manslaughter, and fixing his punishment at 15 years' imprisonment.

The facts are these: On the day of the homicide, appellant was visiting his brother-in-law, Brack Reed, who lived at a mining camp a few miles from Harlan. During that day Randolph Marlow, the deceased, Charlie Marlin, and Robert Ledford, had been driving around

Harlan county in Ledford's automobile, and had purchased a quantity of Abbott's Bitters, of which they partook rather freely. They then came to the home of Brack Reed. When they arrived, appellant was sitting in a chair on the porch, and Reed invited all of them to come into the house. After they went in, a bottle of Abbott's Bitters was passed around. Several of those present drank from the bottle, but appellant claims that he merely placed it to his lips in order not to offend the others present. While appellant was sitting in a rocking chair in the front room, the others went into the kitchen. In a few minutes they returned, and the deceased sat down in appellant's lap, or on the arm of the chair, and, according to the witnesses for the commonwealth, said in substance, "I come over here to kill you, but we are all friends now." The commonwealth's witnesses further say that appellant then pitched the deceased to the floor and kicked him. They then struggled out onto the porch, and into the yard. Appellant kept rushing in on the deceased, who was begging him to desist, saying that he did not mean anything. When they got out into the yard appellant stabbed the deceased twice. When stabbed, the deceased had both of his hands up. On the other hand, appellant's account of the affair is as follows: The deceased got on the arm of the chair and said, "I come over here to kill you." Appellant said, "Randolph, what in the world do you mean?" The deceased said, "You heard what I said." He then grabbed Randolph's hand. When Randolph made that remark Charlie Marlin came up close and said, "And I come with him." He then grabbed Randolph by the arm, jumped up, and Randolph fell on the floor. He thought he would go out the front door and go home. When he started, Randolph came right after him. When Randolph got up close he shoved his hand in his bosom. Randolph did not have any vest on, and he saw the bulk of something under his shirt. He could not say what it was. Randolph kept advancing toward him and grabbed him by the arm. His right arm was in his bosom. They then got to the steps. Randolph kept shoving him over until he stabbed Randolph. The second lick hit his wrist, where he had his hand in his bosom. Randolph was in his shirt sleeves at the time. Randolph went on down the steps and walked off. He weighed about 160 pounds, and Randolph about 135 pounds. There was further evidence that the deceased, Marlin, and Ledford were in-

toxicated, and that the reputation of both appellant and the deceased for peace and quiet was bad.

It cannot be said that the verdict is not sustained by the evidence. If the witnesses for the commonwealth are to be believed, appellant advanced on the deceased, and stabbed him while he had both hands up. Not only so, but appellant's own version of the affair is not very persuasive that he was in any real or apparent danger when he stabbed the deceased. The deceased did not carry a weapon. He was in his shirt sleeves. He was a much smaller man than appellant. Even though appellant saw "the bulk of something in his shirt," he does not claim that deceased drew, or attempted to draw, a weapon of any kind. In the circumstances, it was for the jury to say whether or not appellant acted in self-defense.

In rebuttal, the commonwealth introduced D. H. Smith, the deputy sheriff who arrested appellant, and who, after stating that he thought appellant was intoxicated, testified as follows:

"A. He (appellant) said Randolph Marlow came to Brack Reed's house and sat down by him on the arm of the chair or davenet, whatever it was. He said he put his arm or hand on his shoulder and said to to him 'I came here one time to kill you, but that is all over now, we are friends.' That made him mad. He shoved him down on the floor and stomped him and then pulled his knife and stabbed him three or four times with the knife."

It is insisted that the court erred in admitting this evidence in rebuttal, it being argued that it was an admission by appellant that the deceased said, "But we are friends now," and therefore disclosed a friendly instead of a hostile attitude. While it is the proper practice to introduce all substantive evidence in chief, it is the well-recognized rule that the trial court has a discretion in determining whether evidence should be introduced in chief, or in rebuttal, and, unless his ruling on the question prejudiced the substantial rights of the defendant the case will not be reversed because the strict letter of the law as to the time of the introduction of the evidence was not followed. Hill v. Commonwealth, 232 Ky. 453, 23 S. W. (2d) 930. Prejudice results when the introduction of evidence out of time operates to the dis-

advantage of the defendant. Fugate v. Commonwealth, 202 Ky. 509, 260 S. W. 338. Here the commonwealth was not required to anticipate what appellant would say as a witness. The statement made to Smith would have been of no consequence if appellant had testified to the same effect. When he testified differently, it was then proper to permit the commonwealth to show in rebuttal what he said to Smith. The action of the court in admitting this evidence out of the usual order did not place appellant at a disadvantage. He then had the right, if he desired, to deny the statement attributed to him. We therefore conclude that the admission of the evidence in rebuttal, instead of in chief, did not prejudice appellant's substantial rights.

The further point is made that the court did not give an instruction defining appellant's right to defend himself as against Charlie Marlin and Robert Ledford. The basis of this contention is that appellant testified that, when the deceased stated ''I come over here to kill you,'' Charlie Marlin came up right close and said, ''And I come with him.'' It does not appear that Marlin or Ledford took any part whatever in the difficulty. Indeed, appellant does not claim that Marlin struck or attempted to strike him, or aided or assisted the deceased in any way whatever. It is therefore apparent that Marlin's statement, ''And I come with him,'' was not sufficient to require the court to give an instruction defining appellant's right to defend himself from death or great bodily harm at the hands of either Marlin or of Ledford.

On the whole, we find no error in the record prejudicial to appellant's substantial rights.

Judgment affirmed.