# DECISIONS

OF THE

# COURT OF APPEALS OF KENTUCKY.

JANUARY TERM, 1892.

CASE 81—INDICTMENT—JANUARY 7.

## Carpenter v. Commonwealth.

APPEAL FROM BOONE CIRCUIT COURT.

1. INSANITY AS DEFENSE TO CRIME.—Upon the trial of appellant for maliciously cutting his wife with intent to kill he was not entitled to an instruction as to insanity, there being no doubt from his own testimony of his capacity to know right from wrong. The mere fact that he was intoxicated at the time he committed the crime was not sufficient to authorize such an instruction.

2. MALICIOUS CUTTING.—As the evidence shows that the cutting was not the sudden outburst of passion caused by momentary excitement, but the result of a fixed purpose on the part of the defendant, the jury were authorized, under instructions properly presenting the issue, to find him guilty of malicious cutting, as charged in the indictment, and not merely of cutting in sudden heat and passion.

3. SAME—EVIDENCE.—It was competent to prove the defendant's former treatment of his wife as bearing on the question of malice.

4. PREJUDICIAL ERRORS.—The guilt of defendant being established beyond any doubt, his substantial rights could not have been prejudiced by any error in instructions or by the failure to give an instruction.

5. THE HUSBAND HAS NO RIGHT TO COMPEL HIS WIFE BY FORCE TO OBEY HIS WISHES. The wife's person is as sacred as that of the husband, and the protection afforded by law to the one should not be denied to the other.

MAJOR & DYAS FOR APPELLANT.

W. J. HENDRICK, ATTORNEY GENERAL, FOR APPELLEE.

Record and briefs misplaced.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The appellant was convicted in the Boone Circuit Court of maliciously and unlawfully cutting his wife with a knife, with the intent to take her life.

It appears from the testimony that the married life of these parties had been anything else but harmonious for some time prior to the attempt on the part of the husband to take her life, and the wife was no doubt contemplating a separation at the date of the unfortunate occurrence. The appellant had threatened to kill her if she left him, and at one time thrust a cocked pistol in her face. The accused seems to have been disposed all of his life to have his own way, and permitted nothing, if he could prevent it, to interfere with his will; would use profane language to both his father and mother, and when reproved for his conduct seems not to have felt conscious that he had done wrong. He was fond of liquor, and when intoxicated his bad passions always developed, and when in that condition he made the assault upon his wife. It seems that the wife had been absent for some time, and on her return a friend of hers, Mrs. Vest, was to meet her at Walton, a small town in the country, and take her to her (Mrs. Vest's) home. The accused, however, met his wife and sister and, having a two-horse spring-wagon, insisted on taking them to the home of their friend. They consented to go, and on the way he was constantly abusing her about a new bonnet she had purchased, and was disrespectful in every way to both his wife and her sister. He threatened to take them to the home of Vest, and then return with his wife to his brother's. The wife declined to go with him to his brother's, he insisting that she should. After they

reached the home of Vest, all three, husband and wife and the latter's sister, were invited into Mrs. Vest's room, and after being there for a short time the accused was urgent that his wife should go with him to the front porch. She accompanied him, and again refusing to go with him to his brother's, he said to her that he had heard she intended to leave him, and she responded by saying, "We will talk about that some other time." The accused then said, "Will you kiss me good-bye?" and placing his left hand on her forehead, pushing her head back, deliberately cut her throat from ear to ear, the blood gushing from the wound in a large stream; and from the testimony of the sister, who heard the screams of the wife, was about making a second thrust with his knife that was prevented by her timely interference.

This attempt to take the wife's life was without any palliation or excuse, unless her refusal to comply with the wishes of a drunken husband justified this aggravated wrong. She was neither his mistress nor slave, and was not required by any law, human or divine, to obey the mandate of a cruel husband, devoid, as he attempts to show by his own witnesses, of every attribute of true manhood, as well as an absence of all conscientious feeling.

There are only two legal questions involved in this case. Was the cutting done with malice or in sudden heat and passion? If with malice, it was a felony; if in sudden heat and passion, it was a misdemeanor. These two propositions were presented by instructions in such a manner as that the jury could not have failed to fully comprehend the issue, and embraced the whole law of the case. It is argued that some instruction should have

been given on the subject of insanity; and that while intoxication is no excuse for crime, the condition of the accused might be considered in determining whether the cutting was malicious or in sudden heat and passion. That the accused was rational there can be no doubt, and his conduct toward his wife was perfectly consistent with a character he had made from boyhood up, and that was, to have his own way regardless of consequences. His own testimony in this case shows him not to be so unconscious of right as his own witnesses seem to think. It is plain, intelligent, and made evidently with a view of avoiding the just penalty of the law; and if his mental condition is to be tested by his own testimony, there can be no doubt of his capacity to know right from wrong, and that to take his wife's life was in violation of law. It would in our opinion be a mere mockery of justice to present, by an instruction, the question of insanity, upon the facts of this case, to an intelligent jury.

The entire proof also shows that he was sober enough to fully comprehend the nature of his act, and that the cutting was not the sudden outburst of passion caused by momentary excitement. The excitement began at Walton; it continued to the home of Vest. The wife was invited on to the porch by the husband with knife in hand, and a question propounded to her by the accused that if.not satisfactorily answered must result in her punishment, even to the taking of her life. It was a fixed purpose on the part of the husband, and the testimony is all one way, establishing his guilt beyond controversy. The accused says that he struck at his wife with the knife, only intending to frighten her, and she failing to dodge he accidentally struck her; *that he had before that*

*time made her believe he was going to hurt her when she
refused to do what he wanted her, and found it a good
plan to manage her.* This statement of the accused only
strengthens the testimony of the wife as to the former
treatment of her husband, all of which was competent
on the question of malice, and was properly permitted to
go to the jury.

We have read this testimony with much care, and find
nothing in the record from which any blame can be im-
puted to the wife of the accused. This record furnishes
no evidence whatever reflecting on the wife; but if it
did, where would a court or jury find any justification,
however despicable the wife, for the husband, because
she refused to gratify his wishes, to take from his pocket
a knife and cut her throat? The crime itself is conceded;
if not, the facts establish it beyond any doubt, and we can
not well see how any error in an instruction, or the fail-
ure to give an instruction, could have prejudiced the
substantial rights of the accused.

It would be difficult for this court, in response to the
suggestion of counsel for the appellant, to determine
judicially the extent to which the husband may go in
controlling the conduct and action of the wife, and at
the same time ignore the right of the wife to control the
action of her husband; nor is that a question before us.
The issue in this case is, Has the husband the legal right
to cut the wife's throat when she refuses to obey his com-
mands? It may be stated, however, that under modern
legislation, as well as judicial opinions, that fiction of
legal unity by which the separate existence of the wife
in a legal sense is denied is exploded. Her person is as
sacred as that of the husband, and the protection afforded

by law to the one should not be denied to the other.   In fact, courts of equity have always recognized the separate existence of the wife in reference to her sole and separate estate, and to say that a court of law will recognize in the husband the power to compel his wife to obey his wishes, by force if necessary, is a relic of barbarism that has no place in an enlightened civilization.

The accused has been given a fair and an impartial trial.   His case was heard in a county where he was born and has lived the greater part of his life.   His triers were good men, and in considering the facts of this case when making up their verdict have certainly tempered justice with mercy.

Judgment affirmed.