### CARSON v. COMMONWEALTH.

Court of Appeals of Kentucky.
May 4, 1951.

Kash Williams, G. C. Allen, Jackson, Leeburn Allen, Campton, for appellant.

A. E. Funk, Atty. Gen., Guy L. Dickinson, Asst. Atty. Gen., for appellee.

SIMS, Justice.

Armstrong Carson was tried for the willful murder of Noah Hollon. He was convicted of voluntary manslaughter and his punishment fixed at confinement in the penitentiary for 15 years. Three grounds are assigned by him for reversal of the judgment: 1. The verdict is flagrantly against the evidence; 2. incompetent evidence was admitted over defendant's objection; 3. competent evidence offered by defendant was excluded.

The tragedy occurred on a public road in a remote section of Wolfe County about five o'clock in the afternoon of Sunday, Aug. 20, 1950. A little over a year previous to the killing, defendant had assisted the sheriff in arresting Charles Lindon on a charge of breaking into the house of defendant's sister, for which he was convicted. This caused Lindon to become angry and he threatened "to get even" with defendant. Afterwards, some one shot into the home of defendant's mother and he was accredited with expressing the opinion that Lindon committed the crime. This further provoked Lindon and he made several threats to defendant against his life.

Noah Hollon was a friend and associate of Lindon, both being near 18 years of age, while defendant was 26 years old, and all three lived in the same community. Defendant testified that some days before the shooting in talking to him about a road, Hollon said, "What in the God damn hell have you got your nose in my business, you son-of-a-bitch".

On the fatal Sunday afternoon defendant Carson and several persons had congregated at the home of Lexie Elkins, as was their custom. Hollan and Lindon passed, the latter riding a bicycle and Hollon walking. After they were out of sight some shots were heard but it developed on the trial that Hollon, Lindon and Melvin Profitt were firing a rifle at a target in or near the latter's shop. Melvin

loaned Hollon a pair of nippers which were 12½ inches long and Hollon put them in a paper bag.

Carson, accompanied by Elmer Neff, James Profitt, James Little, and their wives and children, left Elkin's house and started to their homes. When they reached the forks of the road Profitt with the women and children continued on their way home. Neff entered his tobacco patch by the side of the road, started topping tobacco with Carson and Little standing at the edge of the road talking to him.

Carson and Little are brothers-in-law and each testified that while standing with their backs to the road, Lindon and Hollon rode up on one bicycle, got off, and let the "stand-bar" down, and started towards Carson. They were in their shirt sleeves. Lindon had his hand in his pants pocket and said: "You God damn son-of-a-bitch you accused me of breaking into your mother's house and here is as good a time as we will find to settle it". Lindon was in front, took hold of Carson and by the time he had done so, Hollon reached Carson and started striking at him with the paper bag which contained the nippers. Carson pulled a pistol out of his pants pocket and shot Lindon several times. He was killed instantly and when some disinterested witnesses found his body the bicycle was laying across his legs and he was unarmed except for a pocket knife.

Carson then turned his pistol on Hollon and shot him. Hollon went across the road and fell on his right side. Carson further testified he emptied his pistol, which contained six cartridges, "shooting pretty fast". He stated he did not shoot either man after he fell. He was corroborated in his testimony by both Little and Neff.

The Commonwealth produced no eyewitness to the shooting but had several witnesses who testified in what part of the body each victim was hit. James Stewart, the embalmer who prepared the bodies for burial, testified Lindon had a bullet hole in the left nostril, another in his right chest, another in the left rear top of his head, another in the left rear of his neck, another in the rear of his right shoulder, another in the center of his back. It is evident that some of the bullets made two holes in Lindon's body but the witness could not say just which were entrances and which were exits. He further testified Hollon was shot twice; once in the head above and to the rear of his left ear and again in his front left shoulder.

■ On this trial Carson was not charged with killing Lindon but both he and Hollon were killed in the same difficulty and practically at the same time. The facts in the two killings were inseparable and no effort was made to separate them and it would have been next to impossible to have done so. Therefore, the manner in which Lindon was shot was admissible as it had some probative value in determining how Hollon was shot.

■■ In homicide cases where defendant admits the killing and relies upon self-defense, the burden is on him to convince the jury he acted in self-defense. Barker v. Com., 304 Ky. 13, 199 S.W.2d 713; Fields v. Com., 310 Ky. 162, 219 S.W.2d 991. This rule is not applicable where the evidence is all one way and makes out a case of self-defense. Minix v. Com., 266 Ky. 801, 100 S.W.2d 825. But the instant case is not one where the facts are all one way or where they make out a case of self-defense.

True, defendant and his eyewitnesses make a case of self-defense but the physical facts and circumstances cast doubt upon the accuracy, correctness and even the truthfulness of their testimony. It is unusual that the bicycle would have fallen across Lindon's legs had he not been on it when shot and had it been left standing with the "stand-bar" holding it, as Carson testified it was when the boys dismounted from it. The testimony of the embalmer is that Lindon had a couple of bullet holes in his back, another in the back of his neck and one in the left rear top of his head. He further testified Hollon was shot above and to the rear of his left ear. Commonwealth witnesses testified that both Hollon and Lindon when found were lying on their right sides. Furthermore, the Commonwealth proved there was a lapse of several seconds separating the last two

shots from the first burst of fire. It is argued each was shot in the head after he fell.

The jury was not compelled to accept the testimony of defendant and his eyewitnesses but was justified in considering it in the light of all the physical facts. Great latitude must be allowed the jury in determining whether the accused acted in self-defense, and unless the evidence convincingly established that the killing was in self-defense, it cannot be said as a matter of law that the homicide was excusable. Bigby v. Com., 273 Ky. 335, 116 S.W.2d 659; Newsome v. Com., 287 Ky. 447, 153 S.W.2d 949.

The incompetent evidence which it is contended the court erroneously admitted over defendant's objection was that James Wood in answer to the question, "Did you see any fresh tracks", replied, "It looked like Hollon had went across the road on the right hand side of the Lindon boy and turned across the road". This answer was clearly incompetent and the court should have sustained an objection thereto. The witness was next asked, "In which direction did he stagger from the bicycle", and he replied, "Right hand side". There was no testimony that Hollon had staggered and the question was incompetent. But none of this evidence was prejudicial as defendant testified that after Hollon was shot he went across the road and fell on his right side.

The Commonwealth proved by Robert Robinson that shortly after the shooting defendant Carson stated to him he had shot Hollon and Lindon. The court erroneously refused to let the defendant bring out on cross-examination the whole conversation had with Robinson. Hart v. Com., 60 S.W. 298, 22 Ky.Law Rep. 1183; Meadors v. Com., 281 Ky. 622, 136 S.W.2d 1066; Burden v. Com., 296 Ky. 553, 178 S.W.2d 1. The avowal made by the defense shows Carson told the witness the two men were attacking him when he shot them. This error by the court was not prejudicial to defendant because when he took the witness stand he admitted the killing just as Robinson had testified he did, and de-

fendant then testified to all the facts and circumstances relative to the tragedy in an attempt to convince the jury what was done was in self-defense.

Finding no errors in the record which are prejudicial to defendant's substantial rights, the judgment is affirmed.