Stephen DRIVER, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2009–SC–000639–DG.

Supreme Court of Kentucky.

March 22, 2012.

Samuel N. Potter, Department of Public Advocacy, Assistant Public Advocate, Frankfort, KY, for appellant.

Jack Conway, Attorney General, Joshua D. Farley, Assistant Attorney General, Attorney General's Office, Frankfort, KY, for appellee.

Opinion of the Court by Justice VENTERS.

Appellant, Stephen Driver, appeals from an opinion of the Court of Appeals which affirmed a judgment of the Marshall Circuit Court convicting him of first-degree assault and sentencing him to a prison term of fifteen years. Consistent with his arguments before the Court of Appeals, Driver raises the following claims of error: (1) that the trial court erroneously permitted the Commonwealth to introduce KRE 404(b) prior bad act evidence of previous violent conduct by Driver against his present wife (the victim) and his former wife; (2) that the trial court erred by failing to give an instruction on assault under extreme emotional disturbance (EED); and (3) that the Commonwealth committed prosecutorial misconduct during closing arguments by (a) referring to the KRE 404(b) evidence as evidence of intent, and

(b) by asking the jury whether it would "help the victim's children" by its verdict.

Because the evidence of prior bad acts committed by Driver against his ex-wife was inadmissible under KRE 404(b), and we cannot say with reasonable assurance that the error did not sway the verdict, we reverse the first-degree assault conviction and remand for a new trial upon the allegations.[1] We further discuss the other issues raised by Driver insofar as they may arise again upon retrial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In the light most favorable to the verdict, the evidence presented at trial disclosed that in early 2007, Driver resided with his wife, Vera, and their two children in Marshall County, Kentucky. On the night of January 6–7, 2007, they had an altercation that arose because Vera was having an extramarital affair.[2] Neighbors called 911 and reported hearing screams from the direction of Driver's yard. Officer Dan Melone of the Marshall County Sheriff's office responded to the call and was let into the residence by the two children. When asked what was going on, Driver responded "nothing." He told Officer Melone that his wife was in the shower and could not speak with him. Eventually, however, Vera appeared with a towel wrapped around her head and told the officer about their altercation. Afterward, Vera gave a written statement in which she described the assault.

According to Vera's statement, while arguing about the extramarital affair, Driver threw a bottle of glass cleaner at Vera. She ran into the bathroom, but Driver pulled her out by her hair. Driver then threw her on the floor, strangled and hit her, and told her he was going to kill her. Vera ran out the back door but Driver caught her and dragged her by her hair back into the residence. Then, Driver got a belt, wrapped it around Vera's neck and began strangling her and told her multiple times he was going to kill her. Vera felt like she was passing out; Driver again said he was going to kill her and then he was going to kill himself. Vera attempted to escape again by running to the couple's van, but Driver again pulled her by the hair back into the residence. Pictures taken immediately after the assault show patches of hair missing from Vera's scalp, and various scratches and bruises on her face, chest, arms, and neck. Clumps of hair, pulled out by the roots, were also found in the area of the altercation.

As a result of Vera's statement, the Grand Jury returned an indictment charging Driver with attempted murder. However, at the preliminary hearing, and later at trial, Vera changed her story and described a far more subdued altercation, apparently in an effort to minimize Driver's culpability.[3] Most importantly, Vera recanted her allegation that Driver had strangled her with a belt. She testified that some of the injuries apparent on the night of the events, including the injuries around her neck, were caused by her doing

1. Having been acquitted of an attempted murder charge, Driver may not be retried upon that count. *Green v. United States*, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); *Smith v. Commonwealth*, 737 S.W.2d 683, 688 (Ky.1987).

2. Significantly, Vera did not testify that she first told Driver, or that Driver first learned of the affair on the night of January 6–7, 2007.

When Driver first learned of the affair is unclear from the record.

3. The couple reconciled following the events; they continued to live together while Driver was released upon bond pending trial, and during her testimony Vera stated her clear preference that he not be sent to prison.

yard work. She attributed some of her other injuries to carpet burns she received during the scuffle. While she did concede there was a physical conflict, she described it as "wrestling." Overall, Vera's testimony was very sympathetic toward Driver.

In response to the changes in her version of the fight, the Commonwealth introduced Vera's written statement given the night of the events as a prior inconsistent statement. Over Driver's objection, the Commonwealth was also permitted to introduce two episodes of prior violence against Vera and two instances of prior violence against Driver's former wife, Melinda.[4] Prior to the submission of the case to the jury, the trial court denied Driver's request for an instruction on assault under extreme emotional disturbance.

At the conclusion of the trial, the jury acquitted Driver of attempted murder but returned a verdict of guilty on the lesser included offense of first-degree assault.[5] It recommended a sentence of fifteen years' imprisonment, and the trial court entered final judgment in accordance with the jury's verdict and sentencing recommendation. The trial court denied Driver's post-trial motion for judgment notwithstanding the verdict or, alternatively, for a new trial.

Upon review, the Court of Appeals determined that evidence of the prior bad acts committed by Driver against Vera was properly admitted; that evidence of his prior bad acts against his ex-wife was erroneously admitted but that the error was harmless; that the prosecutor's reference to Driver's prior bad acts in closing arguments was error; that the prosecu-

tor's reference to the jury "helping the children" was error, but harmless; and that Driver was not entitled to a jury instruction on the charge of assault under extreme emotional distress.

We granted discretionary review principally to examine whether the prior bad acts evidence was properly admitted, and whether the trial court erred by denying the requested assault under the extreme emotional distress instruction.

## II. PRIOR BAD ACTS EVIDENCE

The Commonwealth filed a pretrial notice pursuant to KRE 404(c) to introduce the prior acts of violence Driver had committed against Vera and his former wife, Melinda. Driver responded with a motion in limine to exclude the evidence. Following a hearing, the trial court ruled that the prior bad acts evidence was admissible under an exception to KRE 404(b) for the purpose of showing that the injuries Vera incurred were not as a result of a mistake or accident, as she now claimed, but, were the result of Driver's intentional violent conduct. The trial court further limited the introduction of Driver's prior acts to conduct for which there had been an actual criminal conviction.

As a result of the trial court's ruling, and over Driver's continued objection, the Commonwealth introduced the following prior bad acts evidence at trial:

1. That in October 2002, Driver waived a butcher knife at Vera, slapped her, and threatened to kill her and, as a result, was convicted of fourth-degree assault, terroristic threatening, and wanton endangerment.

---

4. In conjunction with the admission of this evidence the trial court admonished the jury that it was not to use the evidence as evidence of guilt in this case except to the extent that the evidence proved the absence of accident or mistake.

5. Instructions on the lesser included offenses of second-degree assault, fourth-degree assault, menacing, and harassment were also given.

2. That in April 2002, Driver hit Vera with his hands, with a stick, with a clothes hanger, kicked her with his feet, threatened to have her throat cut with a butcher knife, pulled her hair, made her eat dirt, and put her in the trunk of their car.

3. That in 1995 Driver had been convicted of first-degree assault and wanton endangerment for beating his former wife with a .22 caliber rifle and baseball bat, thereby causing serious physical injuries to her, and that he had served time in prison as a consequence; and

4. That in 1995 Driver broke into his former wife's residence (his former home), attacked his former family, including his son, and threatened to burn down their trailer.

Driver contends that each of these prior bad acts should have been excluded pursuant to KRE 404(b).

### 1. KRE 404(b)

KRE 404(b) provides, in pertinent part: Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:

(1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; . . . .

▪ Generally, evidence of crimes other than that charged is not admissible. KRE 404(b); Lawson, Kentucky Evidence Law Handbook, 3rd Ed., § 2.25 (1993). However, evidence of other crimes or wrongful acts may be introduced as an exception to the rule if relevant to prove motive, opportunity, intent, plan, knowledge, identity, or absence of mistake or accident. KRE 404(b)(1). To be admissible under any of these exceptions, the acts must be relevant

for some purpose other than to prove criminal predisposition, and they must be sufficiently probative to warrant introduction. Further, the probative value of the evidence must outweigh the potential for undue prejudice to the accused. *Clark v. Commonwealth*, 833 S.W.2d 793, 795 (Ky. 1991); *Chumbler v. Commonwealth*, 905 S.W.2d 488, 494 (Ky.1995).

▪ As this Court has previously stressed, KRE 404(b) is "exclusionary in nature," and as such, "any exceptions to the general rule that evidence of prior bad acts is inadmissible should be closely watched and strictly enforced because of [its] dangerous quality and prejudicial consequences." *O'Bryan v. Commonwealth*, 634 S.W.2d 153, 156 (Ky.1982). To determine the admissibility of prior bad act evidence, we have adopted the three-prong test as described in *Bell v. Commonwealth*, 875 S.W.2d 882, 889–891 (Ky.1994), which evaluates the proposed evidence in terms of: (1) relevance, (2) probativeness, and (3) its prejudicial effect. We review the trial court's application of KRE 404(b) for an abuse of discretion. *Anderson v. Commonwealth*, 231 S.W.3d 117, 119 (Ky. 2007).

With the above standards in mind, we now turn to the admissibility of the prior bad act evidence in this case. Because the 404(b) standards are different for a victim in comparison to a third-party, we review the acts relating to Vera and Melinda separately.

### 2. Prior Acts Relating to Vera

As noted above, the prior bad acts evidence relating to Vera included that Driver had waved a butcher knife at her; slapped her; threatened to kill her; hit her with his hands, a stick, and a clothes hanger; kicked her with his feet, threatened to have her throat cut with a butcher knife, pulled her hair, made her eat dirt,

and put her in the trunk of their car. These events occurred in April and October of 2002.

■ "It has long been a rule in this jurisdiction that threats[ [6]] against the victim of a crime are probative of the defendant's motive and intent to commit the crime[.]" *Sherroan v. Commonwealth*, 142 S.W.3d 7, 18 (Ky.2004) (citing *Richie v. Commonwealth*, 242 S.W.2d 1000, 1004 (Ky.1951)); *see also Davis v. Commonwealth*, 147 S.W.3d 709, 722 (Ky.2004) ("[g]enerally, evidence of prior threats and animosity of the defendant against the victim is admissible as evidence of ... intent."); *Harp v. Commonwealth*, 266 S.W.3d 813 (Ky.2008) ("As we have definitively held, 'evidence of similar acts perpetrated against the same victim are almost always admissible....' ").[7]

■ While the above cases demonstrate that as a general rule prior bad acts of a similar nature committed by the defendant against the victim will usually be admissible, the rule is limited in this important respect: prior acts are not admissible when the conduct occurred too remote in time to fairly represent any reasonable application to the present crimes. *Barnes v. Commonwealth*, 794 S.W.2d 165, 169 (Ky.1990) ("Acts of physical violence, remote in time, prove little with regard to intent, motive, plan or scheme; have little relevance other than establishment of a general disposition to commit such acts;

and the prejudice far outweighs any probative value in such evidence. Taken in the light most favorable to the Commonwealth, the testimony ... did no more than establish that on two occasions [occurring four and one-half years and seven years] before the date of the alleged murder, appellant physically abused his wife.").

Thus, in *Barnes*, we disapproved the admission of prior acts of physical violence which, the most recent being approximately four and a half years old, were too "remote in time," to hold much probative worth. Here, the more recent of the alleged prior acts was committed approximately four years and three months prior to the charged crime. The other episode was almost five years prior.

Nevertheless, *Barnes* does not suggest that there is any demarcation point by which remoteness is to be judged. Rather, we construe the case as signaling that, ordinarily, the inquiry will be left to the trial court's sound discretion depending upon the facts of the individual case. For several reasons, we believe the present case is distinguishable from *Barnes*. First and foremost, unlike the murder victim in *Barnes*, here, Vera was alive and well at trial and, indeed, striving mightily to minimize the significance of the violence and to paint Driver as a good father and someone who was needed at home to care for their children. Further, on several occasions the defense emphasized that the fight was over an affair, as though Vera was the one

---

6. By the same line of reasoning, the rule likewise applies to the use of prior actual force against the victim.

7. *See also, e.g., Benjamin v. Commonwealth*, 266 S.W.3d 775 (Ky.2008) (defendant's prior conviction for assaulting his wife was relevant, in murder prosecution arising from strangulation death of his wife some months after the assault, to proving intent and motive.); *Ratliff v. Commonwealth*, 194 S.W.3d 258 (Ky.2006) (evidence of other assaults

perpetrated by a defendant against the same victim is generally admissible to prove intent and motive with respect to the subsequent assault.); *Carpenter v. Commonwealth*, 92 Ky. 452, 18 S.W. 9, 13 Ky.L.Rptr. 658 (1892) (evidence of previous assaults by the husband upon his wife was competent in a prosecution for assault and battery because it conduced to show whether or not he was actuated by malice at the time of the assault and cutting with the knife).

really responsible for the violent confrontation. And finally, Vera told the jury that the injuries depicted in the photographic exhibits were the result of accidents occurring while doing yard work and wrestling on the carpet. And thus the victim herself, unlike in *Barnes*, proactively set forth a confused, if not distorted, version of the couple's previous bouts with domestic violence. Accordingly, because the probative value of the evidence was far greater under the facts of this case, we do not believe that the rule of remoteness as stated in *Barnes* necessarily compelled exclusion of the evidence of prior violent acts against Vera.

Rather, we believe a more analogous case is *Moseley v. Commonwealth*, 960 S.W.2d 460 (Ky.1997). In *Moseley*, the defendant was on trial for murdering his girlfriend. Moseley claimed that the shooting was accidental. During the trial, the Commonwealth was permitted to introduce through friends and acquaintances of the victim that during the time leading up to the homicide the victim had stated that Moseley had committed multiple instances of violence against her. We held that the evidence was admissible under KRE 402(b), stating, "[e]vidence that Appellant had abused his victim on prior occasions was relevant to prove the absence of accident or mistake when he subsequently killed her." *Id.* at 461 (citing *Smith v. Commonwealth*, 904 S.W.2d 220, 224 (Ky. 1995) (prior instances of violence by the defendant against the murder victim held admissible)).[8]

■ We believe that the rationale as stated in *Moseley* is applicable to the facts in the present case, and, accordingly, conclude that the trial court properly exercised its discretion in determining that the evidence of Driver's prior bad acts against

the victim was admissible to show the absence of accident or mistake. More specifically, on the night of the events Vera stated that her injuries were caused by violence committed against her by Driver, but subsequently changed her version to allege that the injuries were caused by accidents occurring while doing yard work and while wrestling on the carpet. Therefore, the prior bad acts evidence was relevant and probative to showing that the injuries were not the result of an accident.

Significantly, KRE 404(b) specifically provides for the admission of prior bad act evidence to show the absence of an accident. That was perhaps the most important issue in the case, so evidence tending to make it more probable that the injuries were the result of violence inflicted by Driver instead of an accident was highly probative. And finally, because of the substantial relevance and probativeness of the evidence, admission of the prior acts did not result in undue prejudice to the Appellant. KRE 403; *Bell, supra.*

Accordingly the prior acts against Vera were properly admitted, and if the evidence is the same upon retrial, may again be admitted to impeach Vera's claims that the injuries were the result of an accident.

### 3. Prior acts relating to Melinda

■ As previously noted, the prior acts of violence committed by Driver against his former wife, Melinda, included a 1995 conviction for first-degree assault and wanton endangerment for beating her with a rifle and baseball bat, and also that in 1995, Driver broke into Melinda's residence and attacked her and her son, and threatened to burn down their trailer.

■ Because prior acts of violence or threats of violence against persons other than the victim in the case on trial have

8. We nevertheless reversed the conviction upon hearsay grounds.

significantly less probative value than similar prior acts and threats against the same victim, as a general rule "specific threats directed against third parties are inadmissible." *Sherroan,* 142 S.W.3d at 18. "[A] threat to kill or injure someone which is specifically directed at some individual other than the deceased is inadmissible, as it shows only a special malice resulting from a transaction with which the deceased had no connection." *Jones v. Commonwealth,* 560 S.W.2d 810, 812 (Ky.1977). *See also Burden v. Commonwealth,* 296 Ky. 553, 178 S.W.2d 1, 3 (1944); *Fugate v. Commonwealth,* 202 Ky. 509, 260 S.W. 338, 340–41 (1924). An exception has been recognized when the threat against the third person is so close in time to the charged offense as to be considered a part of the same transaction. *Chatt v. Commonwealth,* 268 Ky. 141, 103 S.W.2d 952, 954–955 (1937) (threat against third party less than a minute before the killing); *Smith v. Commonwealth,* 92 S.W. 610, 610 (Ky. 1906) (threat against third party five minutes before the killing).

The prior bad acts committed by Driver against Melinda occurred twelve years prior to the violent acts alleged in this case. Thus, pursuant to both the general rule relating to the admission of prior bad acts against third-parties, and the general principles of remoteness described in *Barnes,* it is clear that the admission of Driver's prior acts of violence against his former wife was error.

### 4. Harmless error review

 Having determined that error occurred, we next examine the record to determine if the error in admitting evidence of Driver's prior bad acts was harmless. A non-constitutional evidentia-ry error may be deemed harmless if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error. *Winstead v. Commonwealth,* 283 S.W.3d 678, 689 (Ky. 2009). Upon review of the evidence presented at trial, we cannot conclude with fair assurance that judgment of the jury was not swayed by prejudicial effect of the prior bad acts evidence, and therefore we are constrained to conclude that the error was not harmless. Central to our holding is Vera's recantation of her allegation that Driver strangled her with a belt and her assertion at trial that her injuries were caused accidentally by other means not connected to an assault by Driver. The first-degree assault instruction required the jury to find, among other things, that Driver "intentionally caused serious physical injury to Vera Driver by beating her *and* choking her with a belt." (emphasis added).[9] Thus, if the jury believed Vera's trial testimony that Driver did not use a belt that night, he was entitled to an acquittal under that instruction. It is quite possible that the prejudicial evidence of Driver's prior violence against Melinda swayed the jury away from believing Vera's trial testimony, and toward its finding that Driver wielded a belt on the night in question.

Certainly, the prior bad acts testimony would readily create the impression that Driver was predisposed to violent behavior against women, an impression that would make a jury far more likely to find him guilty. Obviously, the jury was aware of, and rejected opportunities to convict Driver of lesser offenses included in the instructions. Accordingly, the error in admitting this evidence was not harmless.

---

9. Though not raised by the parties, an examination of KRS 508.010 discloses that requiring both the "beating" element and the "choking with a belt" element may not exact-ly mirror the statute, though it appears that any error would have been to Driver's advantage.

Because of the error, we reverse the conviction for first-degree assault and remand the cause for a new trial. Upon retrial, if the evidence is the same, the prior bad acts against Melinda should be excluded.[10] We now review the other allegations of error which may arise again upon retrial.

## III. ASSAULT UNDER EXTREME EMOTIONAL DISTURBANCE INSTRUCTION

[redacted] We next consider Driver's claim that the trial court erred by denying his request for an instruction on assault under extreme emotional disturbance ("EED"). The Court of Appeals affirmed the trial court's ruling, stating, "Driver failed to present any evidence of the state of his emotions at the time of the assault." For the reasons stated below, we conclude that the trial court did not abuse its discretion by denying Driver's request for the instruction, albeit upon different reasoning than the Court of Appeals.

Driver contends that he was entitled to the instruction on EED because the "evidence introduced by the Commonwealth was that Mr. Driver learned of Ms. Driver's affair and that a fight began following this revelation," and that, by inference from the evidence presented at trial, "Mr. Driver lost his temper and reacted based on raw, negative emotion."

[redacted] KRS 508.040(2)(a) states that "[a]n assault committed under the influence of extreme emotional disturbance is . . . [a] Class D felony when it would constitute an assault in the first degree or an assault in the second degree if not committed under the influence of an extreme emotional disturbance." We summarized the definition and elements of EED in *Greene v. Commonwealth,* 197 S.W.3d 76, 81–82 (Ky.2006) as follows:

> Although EED is essentially a restructuring of the old common law concept of "heat of passion,"[ [11]] the evidence needed to prove EED is different. There

10. In Section III, we discuss the trial court's denial of an extreme emotional disturbance ("EED") instruction. Though we conclude that the trial court properly denied the instruction upon the evidence presented in the original trial, it is possible that upon retrial evidence will be presented which would entitle Driver to an EED instruction. If this were to occur, it is conceivable that the prior acts evidence against Melinda becomes admissible in rebuttal because that evidence may legitimately rebut the EED defense by showing that Driver is apt to engage in violence *in the absence* of a triggering event and/or uncontrollable rage. Because it is unknown how the evidence will develop upon retrial, we refrain from offering an opinion on the matter, but rather leave it for the trial court's exercise of discretion in the first instance.

11. It is worth noting that under the common law heat of passion defense, provocation by words alone was generally insufficient to obtain an instruction; and so a claim based on marital infidelity required "ocular evidence of actual adultery" by "discovery of one's lover in an act of 'passion.'" *See* Victoria Nourse, *Passion's Progress: Modern Law Reform and the Provocation Defense,* 106 Yale L.J. 1331, 1363 (1997) (citing *State v. Saxon,* 87 Conn. 5, 86 A. 590, 594 (1913)). Today (or at least at the time of the Nourse article), a minority of jurisdictions still apply that rule, rejecting claims based on a confession or knowledge of adultery. In most jurisdictions, including Kentucky, the possible range of unfaithful conduct is far broader, and an EED defense may be based on a confession of adultery. *Id.* (citing Wayne R. LaFave & Austin W. Scott, Jr., *Criminal Law,* s 7.10, at 656–57 ("The modern tendency is to extend the rule of mitigation beyond the narrow situation where one spouse actually catches the other in the act of committing adultery.")). *See also Spouse's Confession of Adultery as Affecting Degree of Homicide Involved in Killing Spouse or His or Her Paramour,* 93 A.L.R.3d 925 (1979), Eric Y. Drogin, *To the Brink of Insanity: "Extreme Emotional Disturbance" in Kentucky Law,* 26 N. Ky. L.Rev. 99 (1999).

must be evidence that the defendant suffered "a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from [an] impelling force of the extreme emotional disturbance rather than from evil or malicious purposes." *McClellan v. Commonwealth*, 715 S.W.2d 464, 468–69 (Ky. 1986). "[T]he event which triggers the explosion of violence on the part of the criminal defendant must be sudden and uninterrupted. It is not a mental disease or illness. . . . Thus, it is wholly insufficient for the accused defendant to claim the defense of extreme emotional disturbance based on a gradual victimization from his or her environment, unless the additional proof of a triggering event is sufficiently shown." *Foster v. Commonwealth*, 827 S.W.2d 670, 678 (Ky.1991) (citations omitted). And the "extreme emotional disturbance . . . [must have a] reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be." [*Spears v. Commonwealth*, 30 S.W.3d 152, 155 (Ky. 2000) ].

Further, an EED instruction must be supported by some definite, non-speculative evidence. *Padgett v. Commonwealth*, 312 S.W.3d 336, 341 (Ky.2010). The defendant must be both extremely emotionally disturbed and acting under that emotional influence; and there must be an identifiable "triggering event" which resulted in the emotional disturbance. *Spears v. Commonwealth*, 30 S.W.3d 152, 155 (Ky.2000).

An instruction on a lesser included offense is required only if, considering the totality of the evidence, the jury might have a reasonable doubt as to the defendant's guilt of the greater offense and, yet, believe beyond a reasonable doubt that he is guilty of the lesser offense. *Wombles v. Commonwealth*, 831 S.W.2d 172, 175 (Ky.1992). The trial court has no duty to instruct on theories of the case that are unsupported by the evidence. *Payne v. Commonwealth*, 656 S.W.2d 719, 721 (Ky.1983).

Our examination of the trial, testimony discloses that there is no evidence to indicate Driver *first* learned of Vera's affair immediately preceding the altercation, or even on the same day as the assault. Vera's testimony was only that they "were fighting about her affair," *not* that she first told him about the affair that night. Accordingly, Driver's assertion to the contrary is not supported by any testimony presented at trial. Rather, this central premise to Driver's argument is pure speculation.

Because the answer to this question is absent from the record, it cannot be reasonably argued that "the event which trigger[ed] the explosion of violence . . . [was] sudden and uninterrupted," a precondition to obtaining the EED instruction. Similarly, as noted, the reasonableness of the emotional disturbance "is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be." Because the record does not disclose the situation and circumstances relating to the disclosure of the affair—whenever and under whatever circumstances that may have been—there is no means of assessing whether those circumstances could have reasonably and objectively provoked the outrage necessary to obtain an EED instruction, and whether the outrage could reasonably have still persisted, uninterrupted, until the night of the assault. Therefore, we conclude that the trial court

properly declined the request to instruct the jury upon EED.

Upon retrial, if the evidence presented is the same, no EED instruction should be submitted to the jury. If, however, sufficient evidence is presented to support an EED instruction pursuant to the authorities cited above, the instruction should, of course, be given.

## IV. PROSECUTORIAL MISCONDUCT DURING CLOSING ARGUMENTS

Finally, Driver contends that prosecutorial misconduct occurred during the Commonwealth's closing arguments when the prosecutor: (1) referred to the prior violence against Vera and Melinda as evidence of Driver's intent to kill Vera the night of January 6–7, 2007, and (2) speculated that Driver's children may have asked Officer Melone the night of the assault if he was there to help them, and then asked the jury "are you here to help them?"

 "This Court has repeatedly held that a prosecutor is permitted wide latitude during closing arguments and is entitled to draw reasonable inferences from the evidence." *Graham v. Commonwealth,* 319 S.W.3d 331, 341 (Ky.2010) (quoting *Commonwealth v. Mitchell,* 165 S.W.3d 129, 132 (Ky.2005)). "A prosecutor may comment on tactics, may comment on evidence, and may comment as to the falsity of a defense position." *Soto v. Commonwealth,* 139 S.W.3d 827, 873 (Ky.2004) (quoting *Slaughter v. Commonwealth,* 744 S.W.2d 407, 412 (Ky.1987)). "While the prosecutor has a duty to confine his or her argument to the facts in evidence, the prosecutor is entitled to draw reasonable inferences from the evidence, make reasonable comment upon the evidence and make a reasonable argument in response to matters brought up by the defendant."

*Childers v. Commonwealth,* 332 S.W.3d 64, 73 (Ky.2010) (citations omitted).

### 1. Prior Bad Acts Comments

Driver contends that misconduct occurred when the prosecutor referred to the prior violence against Vera and Melinda as evidence of Driver's intent to kill Vera, as opposed to the purpose for which the trial court ruled it admissible—to show the absence of mistake or accident. The trial court permitted the evidence relating to prior violence committed by Driver against Vera Driver and Melinda Driver to be admitted for the purpose of showing the absence of mistake or accident in Driver's infliction of the injuries against Vera. Upon retrial, as noted in Section II, if the evidence is the same, the prior bad acts evidence against Melinda will be excluded, and we presume the prosecutor would not comment upon matters not in evidence. Further, because Driver has been acquitted of attempted murder, upon retrial there will be no reason for the prosecutor to refer to the prior violence in argument of Driver's intent to kill Vera. And finally, as noted in fn. 8, *supra,* upon retrial the prior bad acts evidence against Melinda could become admissible as rebuttal evidence, depending upon the other evidence presented and the exercise of the trial court's sound discretion. If so, during closing arguments the Commonwealth should confine its comments to addressing the purpose for which the rebuttal evidence was admitted, that is, to rebutting an EED defense. *Osborne v. Commonwealth,* 242 Ky. 574, 46 S.W.2d 1066 (1932) (For prosecutors to exceed the bounds of lawful and fair argument by going outside the reasonable boundaries of the evidence and legitimate inferences therefrom is improper).

### 2. Help the Children Comments

Driver contends that the following portion of the Commonwealth's closing argument concerning the possible consequence of the jury's decision on the children was impermissible:

> Forget Vera Driver for a minute. What about the kids? I asked you, 'Could you think of any other victims?' You said, 'Sure, the children.' They're innocent victims. That little girl was six years old.... The little boy was eight. And they answered the door for Dan Melone. And I don't know what they said, but I, I would guess they said something like, 'Are you here to help us? Are you here to help us?' Well, my question to you is, ladies and gentlemen, 'Are you here to help them?' I've done all I can do. Dan's done all he can do.
>
> . . . .
>
> And don't you think these kids have a right to never, ever, ever have to answer the door for a police officer again and say something like 'Are you here to help us?'

We have held that neither the prosecutor, defense counsel, nor the court may make any comment at any time during a criminal trial about the consequences of a particular verdict. *Payne v. Commonwealth,* 623 S.W.2d 867 (Ky.1981). The argument recited above violated this rule by suggesting, out of sympathy for the children, that a verdict of guilty would spare them from a repetition of this type of event in the future. Further, the argument itself was based upon facts not in evidence. No testimony was presented at trial that the children said to Officer Melone "Are you here to help us?" [12] As such, the excluded statement should not have been suggested to the jury. Upon retrial, if the evidence is the same, the Commonwealth should avoid this line of argument.

## V. CONCLUSION

For the foregoing reasons, the judgment of the Marshall Circuit Court is reversed, and the cause is remanded for additional proceedings consistent with this opinion.

MINTON, C.J., ABRAMSON, CUNNINGHAM and NOBLE, JJ., concur. SCHRODER, J., concurs in part and dissents in part, agreeing with the majority that the admission of evidence of prior bad acts relating to Appellant's ex-wife was error, but, believing that the error was harmless in light of the evidence of Vera's injuries, would affirm the conviction. SCOTT, J., concurs in result only by separate opinion.

SCOTT, J., concurring in result only:

Although I agree that this case should be reversed and remanded, I must ultimately concur in result due to the majority's analysis with respect to Driver's requested instruction for extreme emotional disturbance (EED). Moreover, because I would hold that Driver was entitled to an instruction on EED, I also believe that the KRE 404(b) evidence of the incident involving his 1995 conviction for assault and wanton endangerment of his former wife would then be admissible on remand to refute Driver's assertion of EED.

### A. Instruction on EED

In concluding that Driver was not entitled to an EED instruction because there was no evidence presented that Driver first learned of Vera's extramarital affair immediately preceding (or on the same day of) the altercation, the majority implicitly retreats into the antiquated "heat of passion" doctrine. However, "[a]lthough EED is essentially a restructuring of the

---

**12.** The Commonwealth attempted to introduce the child's statement through the testimony of Officer Melone; however, the statement was excluded upon hearsay grounds.

old common law concept of 'heat of passion,' the evidence needed to prove EED is different." *Greene v. Commonwealth,* 197 S.W.3d 76, 81 (Ky.2006). No case better illustrates the liberalization of the evidentiary threshold than *Thomas v. Commonwealth,* 170 S.W.3d 343 (Ky.2005).

In *Thomas,* this Court concluded that the defendant was entitled to an EED instruction due, in part, to an event that did not occur immediately preceding (or on the same day of) the altercation. In that case, the defendant shot two fellow bar patrons after they viciously beat him while he waited outside for a taxi, causing him to lose consciousness at one point and blood to "explode" from his surgically repaired left eye. *Id.* at 348. Importantly, the defendant's eye had been injured at some point prior to this incident when he was mugged in a hotel parking lot in Florida. *Id.* at 347. We considered the previous mugging "relevant to whether there was a reasonable justification or excuse [trigger] under the circumstances as he believed them to be" and held that the trial court erred by refusing to instruct on EED. *Id.* at 350 (internal quotations omitted).

Here, even though the record does not exactly identify when Driver learned of the affair, *it is undisputed that the altercation arose while arguing about the affair.* In light of *Thomas* (and common sense), then, there was sufficient evidence for the jury to believe that Driver first learned of the affair immediately preceding (or on the same day of) the altercation. Simply put, such a conclusion could reasonably be drawn from the fact that the fight stemmed from an argument about the affair.

### B. Prior Bad Acts Evidence

Because I would hold that Driver was entitled to an instruction on EED, I also believe that the KRE 404(b) evidence of the incident involving Appellant's convic-

tion in 1995 for assault and wanton endangerment of his former wife would be admissible on remand. Specifically, the Commonwealth could introduce the two incidents involving Vera, as well as the fact that Driver had beaten his former wife (Melinda) with a rifle and a baseball bat, to contradict Driver's argument that the altercation here was brought on by EED. However, the incident wherein Driver broke into his former home is insufficiently similar to the altercation discussed herein for its probative value not to be substantially outweighed by the potential for undue prejudice. *See* KRE 403.

In summation, I believe the trial court abused its discretion by denying Driver's request for an instruction on EED. Because Driver was entitled to an instruction (and the Commonwealth could then introduce the noted KRE 404(b) evidence), I concur in result only.