# IMPORTANT NOTICE
## <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: AUGUST 20, 2015
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2014-SC-000467-MR

TIMOTHY ROBINSON          APPELLANT

ON APPEAL FROM LINCOLN CIRCUIT COURT
V.          HONORABLE DAVID A. TAPP, JUDGE
NO. 13-CR-00063-001

COMMONWEALTH OF KENTUCKY          APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

A Lincoln County Grand Jury indicted Appellant, Timothy Robinson, of first-degree sodomy (victim less than twelve years old), incest (victim less than twelve years old), and use of a minor in a sexual performance (victim less than twelve years old). A Lincoln Circuit Court jury found him guilty of all three charges and recommended sentences of life imprisonment for sodomy, fifty years' imprisonment for incest, and twenty years' imprisonment for use of a minor in a sexual performance. Appellant now appeals as a matter of right, Ky. Const. § 110(2)(b), and raises the following issues: (1) he was unfairly prejudiced by the trial court's joinder of his case with his brother's, (2) the trial court erroneously admitted evidence of numerous bad acts, and (3) the trial court erred in ordering that his sentence in the case at bar be run consecutively to a sentence he was already serving in a separate case.

# I. BACKGROUND

Appellant lived in a two-bedroom mobile home with his wife, the couple's seven children, and one of his step-daughters, Suzie.[1] Appellant's brother, James Matthew Robinson (Matt), visited Appellant's home frequently, often drinking beer with Appellant until both were intoxicated. Several witnesses testified at trial that the events described below took place when Appellant and Matt got drunk.

Appellant and Matt were each charged with the first-degree sodomy of Appellant's son, Sam, who was under the age of twelve at the time the abuse occurred. Appellant was also indicted for incest and use of a minor in a sexual performance—both these counts related to his sodomy of Sam. The Grand Jury indicted Matt of seven counts of use of a minor in a sexual performance and six counts of first-degree sexual abuse in a separate indictment. All of Matt's charges concerned Appellant's children and Suzie.

# II. ANALYSIS

## A. Joinder

Over Appellant's objection and motion to sever, the trial court granted the Commonwealth's motion to consolidate the two indictments and heard the brothers' cases jointly, as the two were "alleged to have participated in the same act or transaction . . . constituting an offense." RCr 6.20. All but one of

---

[1] We have changed the names of the minors in this opinion.

2

Matt's charges were brought in a separate indictment from Appellant's, however, RCr 9.12 provides:

> The court may order two (2) or more indictments, informations, complaints or uniform citations to be tried together if the offenses, and the defendants, if more than one (1), could have been joined in a single indictment, information, complaint or uniform citation. The procedure shall be the same as if the prosecution were under a single indictment, information, complaint or uniform citation.

Appellant argues that he was prejudiced by the joinder of his and Matt's cases. Pursuant to RCr 8.31, "[i]f it appears that a defendant or the Commonwealth is or will be prejudiced by a joinder of offenses or of defendants in an indictment, information, complaint or uniform citation or by joinder for trial, the court shall order separate trials of counts, grant separate trials of defendants or provide whatever other relief justice requires." As this Court recently held, "[w]e review the trial court's denial of a motion to sever for abuse of discretion . . . and the burden is on the appellant to show that the denial was in fact unfairly prejudicial." *Peacher v. Commonwealth*, 391 S.W.3d 821, 834 (Ky. 2013) (citing *Quisenberry v. Commonwealth*, 336 S.W.3d 19 (Ky. 2011)); *see also Rearick v. Commonwealth*, 858 S.W.2d 185, 187 (Ky. 1993) ("We start with the general proposition that a trial court has broad discretion with respect to joinder, and will not be overturned absent a showing of prejudice and clear abuse of discretion."); *Rachel v. Commonwealth*, 523 S.W.2d 395, 400 (Ky. 1975) ("If upon the consideration of the case a trial judge orders a joint trial, we cannot reverse unless we are clearly convinced that prejudice occurred and that the likelihood of prejudice was so clearly

3

demonstrated to the trial judge as to make his failure to grant severance an abuse of discretion.").

Appellant and Matt did not present antagonistic defenses at trial and the trial court admonished the jury any time testimony applied only to one of the brothers. Accordingly, the trial court instructed the jury several times during the course of the trial that the testimony of various witnesses would be considered only for purposes of Matt and had no bearing on Appellant's case. We have held "[a] jury is presumed to follow an admonition to disregard evidence and the admonition thus cures any error." *Johnson v. Commonwealth*, 105 S.W.3d 430, 441 (Ky. 2003). The only argument Appellant makes to this court to rebut the presumption that the jury followed the trial court's admonitions is that the jury recommended the maximum sentence for each of his charges and recommended that those sentences run consecutively to one another.

Appellant points out that Matt was charged with thirteen counts unrelated to the sodomy charge for which both brothers were jointly indicted. He insists that the testimony solely related to Matt's sexual abuse and use of a minor in a sexual performance charges was often extremely inflammatory. Specifically, Appellant claims that Matt was tried for an additional indictment of first-degree sodomy "of a separate child in which [Appellant] was not alleged to have been involved." However, this claim is patently false. The only charge of first-degree sodomy against Matt tried jointly with Appellant's case was the

4

charge for which Appellant was also indicted: in which both Appellant and Matt were charged with sodomizing Appellant's son, Sam.

Relying on our statement in *Rearick v. Commonwealth*, 858 S.W.2d 185, 187 (Ky. 1993), that "[a] significant factor in identifying such prejudice is the extent to which evidence of one offense would be admissible in a trial of the other offense," Appellant argues that because none of the evidence presented against Matt in the charges stemming from his second indictment would be admissible in Appellant's trial, this created sufficient prejudice. However, as stated above (and as Appellant acknowledges), we will not overturn the decision of the trial court absent a showing that it abused its discretion. "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

As to the brothers' sodomy charge, Sam testified in graphic detail about his father and uncle anally raping him. Sam testified that his father had first sodomized him when he was in first or second grade. He went on to testify that when he was in third grade, his father and Matt took turns having sex with him in the bathroom of the mobile home Sam lived in with his parents and seven siblings. When the Commonwealth asked what he meant by his statement that Appellant and Matt had sex with him, Sam responded that he meant that they stuck their penises in his butt. Clearly, so far as the charges arising from Appellant and Matt's sodomy of Sam, the brothers were "alleged to have participated in the same act or transaction . . . constituting an offense"

5

pursuant to RCr 6.20 and the cases were properly joined under our Rules. Appellant was not prejudiced by the joinder of his and Matt's charges under this indictment. All of the "evidence of one offense would be admissible in a trial of the other offense." *Rearick*, 858 S.W.2d at 187. Therefore, the trial court did not abuse its discretion in denying Appellant's motion for severance of the charges included in the same indictment.

The charges arising from Matt's separate indictment are a bit more problematic. Under that indictment, Matt was charged with six counts of first-degree sexual abuse and seven counts of use of a minor in a sexual performance. The alleged victims were six of Appellant's children, including Sam, and Appellant's step-daughter, Suzie. In addition to Sam and Suzie, three of Appellant's other children testified about Matt touching them inappropriately, or about seeing Matt touch their siblings or step-sister inappropriately. While the evidence of these other charges would not have been admissible in Appellant's trial, we have reviewed the trial record at length and are satisfied with the admonitions the trial court gave the jury. In each instance, the jury was instructed to only consider the testimony as it related to Matt and not to use it against Appellant in any way. Appellant does not attempt to rebut the presumption that the jury followed the trial court's admonitions.

Appellant also complains that a statement a witness (Matt's ex-girlfriend) made prejudiced him. That witness testified that Matt "would get around them [(Appellant's children)] and always tell me that he was going to fuck them in the

ass or make them suck his dick. And he would always say he always wanted a school boy, he would fuck one eight to eighty." The jury was also admonished that this testimony only concerned Matt and that it was not to use any of this witness's testimony against Appellant. We note again that "[a] jury is presumed to follow an admonition to disregard evidence and the admonition thus cures any error." *Johnson* 105 S.W.3d at 441. "Nor does [Appellant] present any argument to rebut the presumption that the trial court's admonition cured the error," *Mills v. Commonwealth,* 996 S.W.2d 473, 485 (Ky. 1999) *overruled on other grounds by Padgett v. Commonwealth,* 312 S.W.3d 336 (Ky. 2010). As such, we hold that the trial court's admonitions cured any error resulting from the joinder of Appellant's and Matt's indictments.

Furthermore, Appellant's argument that the evidence should not have been admitted, as "unless a collateral act has some direct relationship to the charge being tried, its admission necessarily depends on the view that the defendant's character and predisposition are probative of his guilt," *Rearick,* 858 S.W.2d at 187, is without merit. None of the complained of testimony was admitted against Appellant; but, rather, it was admitted against Matt and the jury was specifically directed not to use it in any way against Appellant.

As to Appellant's contention that his sentence reflects the fact that evidence of his brother's crimes prejudiced the jury against him, we point out that the most inflammatory witness statements in the case would have come in as evidence in Appellant's trial regardless of whether it was joined with his brother's. In addition to Sam's testimony that his father sodomized him on at

7

least two occasions in the bathroom of their home, Suzie (who had lived with Appellant since she was around eighteen months old) also testified that Appellant had anally raped her in the same bathroom described by Sam. (This testimony will be discussed in more detail below.) While the evidence against Matt included testimony by several of the children that he had fondled their breasts and/or genital areas inside or outside their clothing or exposed himself to the children or had the children disrobe for him, the trial court admonished the jury not to consider this evidence against Appellant. We believe that the fact that two child witnesses testified that Appellant had anally raped them— and the fact Appellant served as a father figure to both of them—is enough to account for the jury's recommended sentence without accounting for any alleged prejudice.

We are not "clearly convinced that prejudice occurred and that the likelihood of prejudice was so clearly demonstrated to the trial judge as to make his failure to grant severance an abuse of discretion." *Rachel*, 523 S.W.2d at 400. Therefore, we affirm the trial court as to the joinder of Appellant and Matt's trials.

### B. Other Bad Acts Evidence

Appellant next alleges that the introduction of evidence of Appellant's other bad acts constitutes reversible error. First, Appellant argues that Suzie's testimony about Appellant sodomizing her should not have been admitted. This issue was preserved by contemporaneous objection at trial. Appellant also argues that other instances of other bad acts testimony should not have been

8

admitted at trial, though no objections were made regarding this evidence. These unobjected-to instances include: Appellant's daughter's testimony that her father had sexually abused her, Sam's testimony that Appellant had physically abused him, and testimony of Appellant's drug and alcohol use. Appellant argues that the trial court was on notice that such evidence should not be admitted in spite of his failure to object and that we should treat these errors as preserved. In the alternative, he requests that we review this testimony for palpable error.

### 1. Suzie's Testimony

Kentucky Rules of Evidence 404 deals with character evidence and evidence of other crimes. More specifically, KRE 404(b) provides:

> (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:
>
>> (1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or
>>
>> (2) If so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party.

In *Bell v. Commonwealth*, 875 S.W.2d 882, 889 (Ky. 1994), this Court stated "trial courts must apply the rule cautiously, with an eye towards eliminating evidence which is relevant only as proof of an accused's propensity to commit a certain type of crime." We set out a three-prong test that should be followed in determining if KRE 404(b) evidence should have been excluded at trial: (1) the

first factor goes to relevance and asks, "[i]s the other crimes evidence relevant for some purpose other than to prove the criminal disposition of the accused?," *Id.*; (2) the second factor goes to probativeness and asks, "[i]s evidence of the uncharged crime sufficiently probative of its commission by the accused to warrant its introduction into evidence?," *Id.* at 890; and (3) the third factor goes to prejudice and asks, "[d]oes the potential for prejudice from the use of other crimes evidence substantially outweigh its probative value?," *Id.* We review a trial court's evidentiary rulings for an abuse of discretion. *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 577 (Ky. 2000).

Before Suzie testified at trial, the jury was instructed that it could consider the testimony for the limited purpose of Appellant's pattern of conduct—and could not consider her testimony for any other purpose. Suzie testified at trial that Appellant had sex with her. When asked exactly what Appellant did to her, she stated "[p]ut his penis in my butt. He said that he was cleaning it." Suzie had lived in the same house as Appellant from the time she was eighteen months old until she was removed from the home at age fourteen. The described abuse happened sometime between the time she was twelve and fourteen in the same bathroom Sam identified as the location of his abuse. The fact that Appellant had already pled guilty to sexually abusing Suzie and signed a written letter apologizing to her for said abuse was not admitted at trial. The trial court admitted Suzie's testimony, finding that it was relevant and admissible as it established a pattern of conduct. Specifically, the trial court looked at the *Bell* factors and found:

10

[Suzie] lived in Appellant's household since the time that she had any recollection or memory. Appellant was in the role of father to [Sam] and [Suzie] when the sexual abuse occurred against each. The sexual abuse occurred in the same house and same bathroom . . . . [Suzie] described an act of anal penetration that was the same act to which [Sam] testified.

In *Pendleton v. Com.*, 685 S.W.2d 549, 552 (Ky. 1985), this Court held "[e]vidence of independent sexual acts between the accused and persons other than the victim are admissible if such acts are similar to that charged and not too remote in time provided the acts are relevant to prove intent, motive or a common plan or pattern of activity." Appellant argues that *Pendleton* is distinguishable from his case for several reasons. First, he argues that the facts that Suzie and Sam are of different genders and ages, and that Suzie is not his biological daughter, while Sam is his biological son, make the acts dissimilar. We disagree. The sexual act—anal sodomy—was the same in both instances. The fact that Suzie happened to be female did not alter the type of sexual act Appellant subjected her to. Sam was likely around eight years old when his father and uncle sodomized him, while Suzie was between twelve and fourteen when Appellant sodomized her. We do not believe this approximate four-year age difference is enough to say that the acts are not of a similar nature. Finally, Appellant was the only father figure Suzie had ever known. She and Appellant had lived in the same home since she was eighteen months old. As the trial court found, Appellant was a father figure for both Suzie and Sam when he sodomized them.

Next, Appellant argues that, under *Pendleton*, the acts were too remote in time for Suzie's allegations to be properly admitted at trial. We disagree. When

11

they testified at trial, Suzie was sixteen years old and Sam was twelve. Suzie's abuse occurred when she was between the ages of twelve and fourteen (or two to four years prior to the trial) and the last time Sam described being sodomized occurred when he was about eight years old (or about four years before trial). So, these events occurred at the most two years apart, but possibly even closer in time.

Under the *Bell* factors, the trial court had to first determine that the evidence was relevant to prove something apart from Appellant's criminal disposition before it could admit Suzie's testimony. The trial court found that the testimony was relevant to show Appellant's pattern of conduct.

The next *Bell* factor required the trial court to determine if Suzie's testimony of Appellant's other sexual acts was sufficiently probative and, if so, whether the probative value was outweighed by undue prejudice. Appellant points out our language in *Driver v. Commonwealth*, 361 S.W.3d 877, 885-86 (Ky. 2012), that "prior acts of violence or threats of violence against persons other than the victim in the case on trial have significantly less probative value than similar prior acts and threats against the same victim." He goes on to note that "[a]n exception has been recognized when the threat against the third person is so close in time to the charged offense as to be considered a part of the same transaction." *Id.* at 886 *citing Chatt v. Commonwealth*, 268 Ky. 141, 103 S.W.2d 952, 954-955 (Ky. 1937). However, we emphasize that these were not threats of violence as contemplated by *Driver* and *Chatt*; nor were they unproven allegations of sexual abuse brought up for the first time at trial, as

was the case in *Bell*. Rather, Suzie's testimony was describing abuse for which Appellant had been previously charged and to which he had already pled guilty (thought this fact was not revealed to the jury). We cannot hold that the trial court abused its discretion in allowing the testimony to come in under these factors—it was close enough in time and circumstances to be considered part of the same transaction and to show a course of conduct. Moreover, as this Court held in *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999):

> [t]he test of relevancy having been satisfied by proof of a modus operandi, the evidence of [Appellant's] prior sexual misconduct was properly admitted unless its probative value was substantially outweighed by the danger of undue prejudice. KRE 403. This is the point at which the issue of temporal remoteness becomes a factor in determining admissibility. *Robey v. Commonwealth*, Ky., 943 S.W.2d 616, 618 (1997). However, it is not the sole determining factor. While temporal remoteness tends to lessen the probative value of the evidence of Appellee's prior sexual misconduct, its probativeness is conversely heightened by the multiplicity of victims, the multiplicity of occurrences, and the fact that the abuse was perpetrated against members of several generations of the same family. *Lear v. Commonwealth*, Ky., 884 S.W.2d 657 (1994). The balancing of the probative value of such evidence against the danger of undue prejudice is a task properly reserved for the sound discretion of the trial judge. *Rake v. Commonwealth*, Ky., 450 S.W.2d 527, 528 (1970).

*See also Jones v. Commonwealth*, No. 2002-SC-1011-DG, 2005 WL 635051, at *2 (Ky. Mar. 17, 2005) ("When the charged crime and the uncharged crime are so similar and so unique as to indicate a reasonable probability that the crimes were committed by the same person, under the same circumstances, the evidence of the uncharged crime is admissible.").

Suzie's testimony tended to show that Appellant had a common scheme or pattern of conduct: sodomizing his children in the bathroom of their home.

13

Of course this testimony is prejudicial to his case—just as any adverse evidence is. However, we hold that the trial court did not abuse its discretion in finding that Suzie's testimony was not only probative, but that it was also more probative than prejudicial. Suzie's testimony was properly admitted for the limited purpose of showing Appellant's pattern of conduct.

### 2. *Unpreserved Evidentiary Errors*

Appellant alleges that, although unobjected to, the remainder of his allegations of error were, in fact, preserved, as the trial court "was on notice that such evidence should not be admitted." This argument is disingenuous, as Appellant admits that "his trial counsel inexplicably did not object." In fact, trial counsel failed to object even after the trial court sua sponte asked counsel to approach the bench and raised KRE 404(b) concerns. Even after the trial court pointed out that there had been no objection on those grounds, Appellant's trial counsel still failed to make one. Appellant asks, in the alternative, that we review these allegations for palpable error pursuant to RCr 10.26. "Palpable error affects the substantial rights of the party and results in manifest injustice. Furthermore, an appellant claiming palpable error must show that the error was more likely than ordinary error to have affected the jury." *Boyd v. Commonwealth*, 439 S.W.3d 126, 129-30 (Ky. 2014). "In determining whether an error is palpable, 'an appellate court must consider whether on the whole case there is a substantial possibility that the result would have been any different.'" *Commonwealth v. Pace*, 82 S.W.3d 894, 895 (Ky. 2002) (citing *Commonwealth v. McIntosh*, 646 S.W.2d 43. 45 (Ky. 1983)).

14

We will not examine whether any error occurred in these instances, but only, if there was an error, if it rose to the level of palpable error.

### a. Patty's testimony

Appellant's first unpreserved contention arose from the testimony of his daughter, Patty, who was eight years old at the time of trial. When the Commonwealth asked Patty if she had been sexually abused, she responded in the affirmative. Then, when the Commonwealth asked Patty who had abused her, she said, "my dad." Appellant did not object, but now complains that he had no notice under KRE 404(c) that this testimony would be provided and that it failed to meet the admissibility requirements under the *Bell* test.

The Commonwealth points out that it did not follow up on Patty's response that Appellant had sexually abused her. Rather, it immediately asked Patty if anyone else had sexually abused her and began asking her questions about Matt. The Commonwealth did nothing to emphasize Patty's statement about Appellant. We hold that any error in the admission of Patty's testimony was not "more likely than ordinary error to have affected the jury." *Boyd,* 439 S.W.3d at 129-30 (Ky. 2014). Furthermore, considering the other evidence presented against Appellant, there is no "substantial possibility that the result would have been any different" in the absence of any such error. *Pace,* 82 S.W.3d at 895.

### b. Sam's testimony of physical abuse

During Sam's testimony, he recounted an event during which Appellant slammed his head into the bathroom wall, leaving a hole visible in pictures he

15

and Suzie were shown to identify the bathroom in which Appellant sodomized them. When the Commonwealth asked Sam about this event, the trial court asked counsel to approach the bench and expressed concerns about KRE 404(b). Appellant's counsel's only remark was that he did not "have notice of 404(c)." Appellant never objected to the line of questioning. The trial judge informed the Commonwealth that if these claims could be related to the charges, that would be fine, but, "just general evidence about these are bad people *despite the lack of objection*, I am not going to allow that." (Emphasis added.)

The Commonwealth argues that this testimony should have come in to avoid any unanimous verdict issues. There is no need for us to address that contention, because, due to the lack of objection—even though the trial court indicated that it may be a concern—we will review only for palpable error. Sam testified in depth about what Appellant did to him sexually. There is no substantial possibility that a manifest injustice occurred such that the result in the case would have been any different absent testimony of physical abuse. Therefore, we hold that there was no palpable error.

### c. *Drug and Alcohol Use*

Again, Appellant raised no objection to any admission of testimony that he drank, used drugs, or was unemployed. Much of the testimony regarding his alcohol use was when the children were "setting the scene" for the events surrounding their abuse. The testimony concerning his unemployment only came up when a witness testified that he stayed home with the kids. Due to

16

the testimonial evidence the jury heard from Sam and Suzie concerning being sodomized by Appellant, there is no substantial possibility that a manifest injustice occurred such that the result in the case would have been any different absent testimony of physical abuse. Therefore, we hold that there was no palpable error.

## C. Sentence

The jury recommended that Appellant be sentenced to life imprisonment for sodomy, fifty years' imprisonment for incest, and twenty years' imprisonment for use of a minor in a sexual performance. The judgment is silent as to whether the sentences are to run concurrently or consecutively. Appellant claims that the trial court erred in ordering that his life sentence be run consecutively to a twenty year sentence he was already in the process of serving. He points out that this ruling was made orally, but that the sentencing order failed to reflect whether the sentences were to be run concurrently or consecutively.

As the Commonwealth points out, the sentences must be served concurrently pursuant to KRS 532.110, which provides:

> (2) If the court does not specify the manner in which a sentence imposed by it is to run, the sentence shall run concurrently with any other sentence which the defendant must serve unless the sentence is required by subsection (3) of this section or KRS 533.060 to run consecutively.

While the trial court did orally rule from the bench that Appellant's life sentence should be served consecutively to the twenty-year sentence he had already begun serving (and even indicated he would like a ruling from this

17

Court on the issue), the written order did not reflect this. In fact, the order did not refer to Appellant's twenty-year sentence at all. "[T]he rule in Kentucky is that when there is an inconsistency between oral statements of the presiding judge and an order or judgment reduced to writing, the written order or judgment prevails." *Cardwell v. Commonwealth*, 12 S.W.3d 672, 678 (Ky. 2000), *citing* RCr 13.04; CR 54.01; *Commonwealth v. Taber*, Ky., 941 S.W.2d 463, 464 (1997); *Commonwealth v. Hicks*, Ky., 869 S.W.2d 35, 37–38 (1994).

Appellant's sentence, as pronounced in the written sentencing order, comports with the law. There is no relief to be granted upon this issue and we will not address it further.

### III. CONCLUSION

For the foregoing reasons, we affirm Appellant's convictions and sentence.

Minton, C.J., Abramson, Barber, Cunningham, Keller, and Noble, JJ., concur. Venters, J., dissents by separate opinion.

VENTERS, J., DISSENTS: I respectfully dissent because I believe that Appellant's trial on three counts involving a single victim should not have been joined for trial with the multitude of charges against his brother, Matt, involving seventeen crimes against seven different victims. The majority concedes that much of the evidence presented against Matt would have been inadmissible in a trial against Appellant.

The fact that Appellant was being tried alongside his brother does not render such evidence admissible against Appellant; in fact, the association of

18

Appellant at trial with his brother on the unrelated crimes enhanced the prejudicial effect of the improper evidence. I do not believe any trial judge could fashion an admonition to the jury sufficient to remove that taint. Introducing such prejudicial evidence and telling the jury not to consider it was like throwing hot pepper into the stew and telling the jury not to taste it. I believe Appellant's conviction should be reversed.

COUNSEL FOR APPELLANT:

Jason Apollo Hart, Assistant Public Advocate

COUNSEL FOR APPELLEE:

Jack Conway, Attorney General of Kentucky
James Hays Lawson, Assistant Attorney General

19