RENDERED: AUGUST 29, 2019
TO BE PUBLISHED

𝕾upreme 𝕮ourt of 𝕶entucky

FINAL

DATE 3/26/2020
J. Hutcheson

2018-SC-000085-MR

GREGORY Q. POSEY                                                      APPELLANT


V.
ON APPEAL FROM LOGAN CIRCUIT COURT
HONORABLE JOHN L. ATKINS, SPECIAL JUDGE
NO. 16-CR-00195


COMMONWEALTH OF KENTUCKY                                     APPELLEE


**OPINION OF THE COURT BY JUSTICE HUGHES**

**<u>AFFIRMING</u>**

Gregory Q. Posey appeals as a matter of right from the Logan Circuit

Court judgment sentencing him to life in prison for murder and being a

convicted felon in possession of a handgun. Posey was convicted of murdering

Patrick "PJ" Gilbert, who was in a relationship with Posey's ex-girlfriend, the

mother of his two children. On appeal, Posey argues that the trial court erred

in (1) failing to give the jury an instruction on extreme emotional disturbance,

(2) failing to admonish the jury, and (3) failing to exclude prior convictions

provided prior to the penalty phase. Finding no error, we affirm the trial court.

## FACTS AND PROCEDURAL HISTORY

From 2009 to 2014 Gregory Posey and Chelsea Ogles were in a relationship which produced two children. In 2015, Ogles entered a relationship with Posey's friend, Patrick "PJ" Gilbert. When Posey learned of their relationship, he was angry and felt disrespected and betrayed. Posey called Judge Tyler Gill, the local circuit judge, on March 28, 2016, because he was very upset and expressed that he did not care whether he went to the penitentiary or the graveyard but he refused to let someone keep disrespecting him.[1] Judge Gill met with Posey a short time after their phone conversation. At trial, Judge Gill testified that during the in-person conversation he tried to reason with Posey and reminded him of the potential consequences of taking extreme action. Judge Gill stated that after Posey expressed that consequences did not matter to him, Judge Gill arranged for immediate counseling for Posey.

After talking with Posey, Judge Gill asked a sheriff to speak with Chelsea and PJ to warn them because Posey was very upset. The sheriff also attempted to find Posey. Because of these potential threats to harm either Chelsea or PJ, the police began monitoring Posey's Facebook account. As early as June 2015 (more than a year before PJ's murder), Posey began making threatening comments to PJ via text message and Facebook. At trial, the Commonwealth introduced numerous messages from Posey to PJ stating things like "you can't

---

[1] It is unclear why Posey reached out to Judge Gill. Judge Gill recused himself from Posey's case in anticipation of being required to testify at trial, and a special judge was appointed.

2

hide forever," Posey swearing on his life that PJ is going to die, and that he bets he will kill PJ before PJ kills him.[2]

On July 24, 2016, Patrick "PJ" Gilbert (PJ) was playing dice with friends in a small room used for gaming. Posey entered the room and shot PJ five times. PJ then crawled outside where he died soon after.

After a jury trial, Posey was convicted of murder and being a convicted felon in possession of a firearm and he was sentenced to life imprisonment.[3] Posey now appeals his conviction as a matter of right.

## ANALYSIS

Posey alleges three errors on appeal: (1) the trial court erred by not giving an instruction for first-degree manslaughter based on extreme emotional disturbance; (2) the trial court should have admonished the jury that prior threats are not substantive evidence that Posey committed a crime, and (3) the trial court should have excluded prior convictions that were provided to the defense the morning of sentencing. We address each argument in turn.

---

[2] The Commonwealth introduced over 50 threatening messages sent from Posey to PJ between February and May of 2016. The Commonwealth also introduced numerous violent threatening messages Posey posted on Facebook between February and July of 2016. Some of the posts reference PJ directly. We also note that approximately twenty-two minutes of the video record is missing, during which time the Commonwealth was presenting other threatening messages.

[3] The jury recommended a life sentence for the murder and ten years on the firearm possession charge to be served consecutively. Because a term of years sentence cannot run consecutively to a life sentence, the trial court sentenced Posey to life in prison, with the ten-year sentence running concurrently.

## I. The Trial Court Did Not Err in Denying Posey's Request for a First-Degree Manslaughter Instruction Under Extreme Emotional Disturbance.

When discussing jury instructions during trial, Posey argued that he was entitled to a first-degree manslaughter instruction on the grounds that he acted under extreme emotional disturbance (EED). Posey argued that his Facebook posts and the text messages he sent to PJ showed his state of mind, *i.e.*, that he was "beyond upset." He stated that finding out Chelsea was pregnant constituted the triggering event, which led to PJ's death.

The Commonwealth disagreed, stating that there was no testimony as to how or when Posey found out about the pregnancy, the alleged triggering event. Further, the Commonwealth suggested Posey may have pre-meditated using EED as a defense based on a text message Posey sent to PJ that contained death threats and stated "[n]ot guilty on the grounds of insanity." After hearing arguments from both sides, the trial court decided against providing a first-degree manslaughter instruction on the basis of EED. On appeal, Posey argues that the trial court erred in failing to instruct the jury based on EED. "We review a trial court's rulings regarding jury instructions for an abuse of discretion." *Ratliff v. Commonwealth*, 194 S.W.3d 258, 274 (Ky. 2006) (citing *Johnson v. Commonwealth*, 134 S.W.3d 563, 569-70 (Ky. 2004)).

Under Kentucky Revised Statute (KRS) 507.030(1)(b),

[a] person is guilty of manslaughter in the first degree when:

[w]ith intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he acts under the influence of extreme emotional disturbance . . .

4

EED is defined by this Court as follows:

> Extreme emotional disturbance is a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from the impelling force of the extreme emotional disturbance rather than from evil or malicious purposes. It is not a mental disease in itself, and an enraged, inflamed, or disturbed emotional state does not constitute an extreme emotional disturbance unless there is a reasonable explanation or excuse therefore, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under circumstances as defendant believed them to be.

*McClellan v. Commonwealth*, 715 S.W.2d 464, 468-69 (Ky. 1986).

The EED defense requires a triggering event that provokes the disturbance, and this Court has held that the triggering event may include "the cumulative impact of a series of related events." *Fields v. Commonwealth*, 44 S.W.3d 355, 359 (Ky. 2001). While a triggering event does not have to immediately precede a criminal act, it must be sudden and uninterrupted. *Keeling v. Commonwealth*, 381 S.W.3d 248, 265 (Ky. 2012). "Because one's emotional response to a situation may dissipate over time, a subsidiary inquiry arises as to whether there intervened between the provocation and the resulting homicide a cooling-off period of sufficient duration that the provocation should no longer be regarded as 'adequate.'" *Fields*, 44 S.W.3d at 359.

To summarize, to be entitled to an EED instruction, Posey must prove there was a sudden and uninterrupted triggering event, he was extremely emotionally disturbed as a result, and he acted under the influence of that disturbance. The reasonableness of a claim of EED is evaluated subjectively

5

from the defendant's point of view. *Holland v. Commonwealth*, 466 S.W.3d 493, 503 (Ky. 2015) (citing *Spears v. Commonwealth*, 30 S.W.3d 152, 154 (Ky. 2000)).

Posey argues that there was sufficient evidence to warrant an instruction on first-degree manslaughter, with the triggering event being his finding out Chelsea was pregnant with PJ's child. He supports this assertion by pointing to a police interview with Jason Lyons, Posey's uncle, that Chelsea's pregnancy is probably what "tipped him over the edge" and led to Posey killing PJ. This portion of the interview was played during Lyons's testimony at trial. However, Lyons did not state that he knew this definitively; he was speculating. Posey also highlights testimony from the sheriff who went to find Posey on March 28, 2016, after Posey's conversations with Judge Gill. The sheriff stated that Posey told him Chelsea was pregnant. However, Chelsea's own testimony established that she was only eight or nine weeks pregnant at the time of PJ's death on July 24, 2016. The child was born in February 2017, making it impossible that she was pregnant in March 2016.[4]

Posey also points to his March 28, 2016 conversation with Judge Gill, who testified at trial that Posey was distraught and wanted help through

---

[4] We note that Posey's brief refers to Posey finding out Chelsea was pregnant sometime after June 20. When Posey cross-examined Chelsea, counsel elicited testimony from her about when she discovered she was pregnant. Chelsea stated it was sometime in June. Counsel asked whether it could have been June 20 when she found out, and she said it was possible. It is unclear from the briefs what the significance of June 20 is. Given the length of the trial, we were unable to discover from the recordings a mention of June 20 outside of Chelsea's testimony and a mention of June 20 when Posey requested an EED instruction.

counseling. Posey claims that his recorded phone conversation with Judge Gill reveals that he thought Chelsea was pregnant. During this phone conversation, which was played for the jury, Posey stated that PJ had "messed with" Chelsea, but never stated that he believed her to be pregnant.

Posey told Judge Gill that he needed help before he went to the "penitentiary or the graveyard," because he refused to let someone keep disrespecting him. He stated, "I don't want to do nothing to him because I got kids and don't want to leave them like that . . . but if I got to I swear to God . . . ." Judge Gill advised Posey to take a minute and think about the consequences, to which Posey responded that he had done so. This March 28, 2016 conversation indicates that four months prior to the murder Posey had considered taking action against either PJ or Chelsea that could cause him to end up in jail. This phone conversation clearly undercuts the idea that Chelsea and PJ's relationship and the pregnancy were so sudden or shocking as to override his judgment and compel him to kill PJ. He expressly considered taking extreme action well before Chelsea became pregnant or he knew of her pregnancy.

Further, there is nothing indicating that Posey's state of mind was temporary. The Commonwealth introduced Facebook posts and text messages from Posey to PJ that involved numerous threats on PJ's life. In a June 2015 reply to PJ's mother identifying PJ in a photo, Posey commented "look good in a casket." Two posts from February 2016 threaten PJ's life, with Posey stating that PJ is not allowed in his neighborhood and instructing people that if they

7

see PJ to call him. The posts also indicate that Posey would rather be a prime suspect than a victim, stating that he would rather be "judged by 12 then carried by 6." In a July 14, 2016 post, made ten days before the murder, Posey states that before he gets booked for something petty, he would rather be booked for murder, stating "C if I can't make #BREAKING NEWS." Posey also sent numerous threats via text message to PJ, implying that he would kill him. In a message from March 27, 2016, Posey threatened PJ, then stated "not guilty on the grounds of insanity." As the Commonwealth pointed out while contesting Posey's entitlement to an EED instruction, these messages indicate Posey may have pre-meditated using EED as a defense. Overall, these posts and messages covering a thirteen-month period before the murder reveal that Posey contemplated extreme action long before Chelsea's pregnancy.

The trial court is obligated to instruct the jury on the "whole law of the case, and this rule requires instructions applicable to every state of the case deducible or supported to any extent by the testimony." *Taylor v. Commonwealth*, 995 S.W.2d 355, 360 (Ky. 1999). This obligation extends to lesser-included offenses and affirmative defenses but is dependent upon there being sufficient evidence to warrant the giving of an instruction. *Turner v. Commonwealth*, 544 S.W.3d 610, 625 (Ky. 2018). The only evidence of the pregnancy being the triggering event is Lyons's speculation that that's what "tipped" Posey "over the edge" and the sheriff's testimony that Posey told him about the pregnancy, which would have been impossible as of March 2016 given the child's birth in February 2017. "The trial court has no duty to

8

instruct on theories of the case that are unsupported by the evidence." *Driver v. Commonwealth*, 361 S.W.3d 877, 888 (Ky. 2012). Additionally, an EED instruction must be supported by definite, non-speculative evidence. *Padgett v. Commonwealth*, 312 S.W.3d 336, 341 (Ky. 2010). Based on these standards, there was not sufficient evidence to warrant an EED instruction with Chelsea's pregnancy as the triggering event.

Posey's case is similar to *Driver*, 361 S.W.3d at 887, which also involved a claim of error regarding the failure to instruct on EED. Driver was convicted of first-degree assault after a physical altercation with his wife. *Id.* at 881. Driver argued that he was entitled to an EED instruction because the altercation stemmed from him first learning about his wife's alleged affair that night, causing him to lose his temper. *Id.* at 887. This Court held that Driver's assertion that he first learned of the affair that night was not supported by any testimony presented at trial. *Id.* at 888. This Court stated:

> Because the record does not disclose the situation and circumstances relating to the disclosure of the affair—whenever and under whatever circumstances that may have been—there is no means of assessing whether those circumstances could have reasonably and objectively provoked the outrage necessary to obtain an EED instruction, and whether the outrage could reasonably have still persisted, uninterrupted, until the night of the assault. Therefore, we conclude that the trial court properly declined the request to instruct the jury upon EED.

*Id.* at 888-89.

Similarly, Posey points to no evidence to suggest that his learning of Chelsea's pregnancy, "whenever and under whatever circumstances that may

have been," *id.*, provoked the outrage required for an EED instruction. While the triggering act "may or may not immediately precede the criminal act, it must be sudden and uninterrupted." *Keeling*, 381 S.W.3d at 265. Posey did not present sufficient evidence of the circumstances surrounding this situation to merit an EED instruction, and accordingly, the trial court properly denied the request to instruct the jury on first-degree manslaughter.

## II. The Trial Court Did Not Err in Denying Posey's Motion to Admonish the Jury as to the Use of Threats.

Posey argues that the trial court should have admonished the jury that evidence of the threats Posey made to PJ were not evidence of his guilt. "Generally, evidence of prior threats and animosity of the defendant against the victim is admissible as evidence of motive, intent or identity." *Davis v. Commonwealth*, 147 S.W.3d 709, 722 (Ky. 2004). Under Kentucky Rule of Evidence (KRE) 105(a), "[w]hen evidence which is admissible as to one (1) party or for one (1) purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and admonish the jury accordingly." An alleged error under KRE 105 is subject to harmless error analysis. *Soto v. Commonwealth*, 139 S.W.3d 827, 859 (Ky. 2004). The inquiry is whether the error had substantial influence. *Winstead v. Commonwealth*, 283 S.W.3d 678, 689 (Ky. 2009).

In *St. Clair v. Commonwealth*, 140 S.W.3d 510, 559 (Ky. 2004), a defendant waited until the close of evidence to request a limiting instruction as to the appropriate purpose of certain evidence pursuant to KRE 105. This Court held that

10

> [a]lthough the substantive distinction between admonitions and instructions is not always clear or closely hewn to, we interpret the first word of KRE 105(a), *i.e.*, "when," to mean that *the request for* a "limited purpose" admonition must be made *at the time that the evidence in question is admitted* and no later than after the direct examination at which the evidence is introduced.

*Id.* (internal citations omitted) (emphasis in original). Although it is within the trial court's discretion to determine when the admonition should be given, it must be requested "no later than after the direct examination" where the evidence is introduced. *Id.*

In this case, the Commonwealth introduced the threatening text messages and Facebook posts through the testimony of a detective who helped monitor Posey's Facebook account periodically after Judge Gill alerted officers about the ongoing situation between Posey and PJ. The detective testified at trial on September 15 and 18, 2017.[5] The threatening messages were obtained from PJ's two cell phones, one of which was examined by a detective from the Bowling Green police department and the other which was examined by the detective that testified at Posey's trial. Both detectives downloaded the text messages, and both the text messages and the Facebook threats were introduced for identification purposes during the detective's testimony. They were formally admitted into evidence outside the presence of the jury during a

---

[5] The detective began testifying on September 15, 2017, and the threatening messages and Facebook posts were introduced for identification purposes in her September 15 testimony. After this testimony, the Commonwealth attempted to play the video of Posey's interview with the detective, but experienced technical difficulties. Therefore, the court adjourned for the day and resumed with the detective's testimony on the next court day, which was September 18.

11

hearing on the day the detective concluded her testimony. Posey did not request the admonition either after or during the direct examination of the detective or at the time the evidence was admitted.

Posey formally requested an admonition in writing and filed the motion with the judge on September 19, 2017. The motion contains a note from the judge, stating that the motion was denied both "upon oral presentation 9/18/17 and now upon written submission."[6] Although the judge's note states an oral presentation was made on September 18, 2017, a review of the record and testimony of the detective does not show an admonition was requested during the detective's testimony or at the end of direct examination as required by KRE 105 and *St. Clair.* Therefore, the trial court appropriately denied the belated request for an admonition.

### III. No Discovery Violation Occurred Regarding Posey's Prior Convictions.

Posey's trial was trifurcated because he was charged with being a convicted felon in possession of a handgun. As part of discovery, the Commonwealth provided Posey's prior convictions of trafficking and possession of a controlled substance to use as the basis for the handgun charge. After hearing about these prior convictions, the jury found him guilty. Before the penalty phase, the Commonwealth gave Posey certified records of prior

---

[6] The only time an oral presentation of the motion could have been made is an off-the-record meeting with counsel in chambers at the end of the day on September 18, 2017. This was not only after the detective testified but also after the Commonwealth closed its case and after the defense called four witnesses of its own. This was well after the detective's testimony and unquestionably untimely.

12

convictions for crimes other than the prior drug convictions, such as menacing, fourth-degree assault, criminal mischief and terroristic threatening. In a bench conference, Posey argued that the other convictions should not be admitted since they were just presented to him and he was unable to prepare properly. The prosecutor responded that she had just received the records, and that the prior convictions were available to the defense as well, so it was not something the defense could not have known about it. The judge determined that the defense was not claiming they were surprised by the new convictions, and that Posey's record was available to them as well. Accordingly, the trial court allowed the Commonwealth to introduce the additional prior convictions in the penalty phase.

In the beginning stages of this case, Posey requested discovery under Rule of Criminal Procedure (RCr) 7.24(2), which states

> [t]he court may order the attorney for the Commonwealth to permit the defendant to inspect and copy or photograph books, papers, documents, data and data compilations or tangible objects, or copies or portions thereof, that are in the possession, custody or control of the Commonwealth, upon a showing that the items sought may be material to the preparation of the defense and that the request is reasonable.

On appeal, Posey argues that the trial court should have excluded the prior convictions that were provided to the defense before the penalty phase because the late production constituted a discovery violation.

> We have stated that the premise underlying RCr 7.24 is not only to inform the defendant of her prior convictions (of which she should be aware), but to inform her that the Commonwealth has knowledge thereof. "This ensures that the defendant's counsel is capable of putting on an effective defense, as per the intent of the rule."

*Baumia v. Commonwealth*, 402 S.W.3d 530, 545 (Ky. 2013) (internal citation omitted). Clearly, pursuant to the trial court's discovery order, Posey was entitled to production of the prior convictions the Commonwealth sought to introduce before sentencing. The prosecutor stated that she had been trying to obtain the records and had just received them. Although there was little discussion about why the records were not made available until so late in the trial, the Commonwealth was obligated to disclose the convictions as soon as they were made available. The only information in the record regarding when the Commonwealth obtained the prior convictions is the prosecutor's statement that she just received them. Without more information or evidence to the contrary, we cannot say that the Commonwealth committed a discovery violation.

Although Posey did not have much time between when the prior conviction records were presented to him and the penalty phase of trial, we also cannot say that he was prejudiced assuming a discovery violation did occur. "[A] discovery violation serves as sufficient justification for setting aside a conviction when there is a reasonable probability that if the evidence were disclosed [or, in this case, disclosed in a more timely manner] the result would have been different." *Chestnut v. Commonwealth*, 250 S.W.3d 288, 297 (Ky. 2008). Posey argues that his sentence may have been different had the evidence been disclosed sooner, but this argument is unpersuasive. The Commonwealth simply produced a witness who read the records regarding the prior convictions, and no overt emphasis was placed on the prior crimes in the

14

Commonwealth's closing argument during the penalty phase. Additionally, the prior convictions were evidence of comparatively minor crimes considering the jury had just found Posey guilty of murder. Since Posey has not shown prejudice, the trial court's decision to allow the Commonwealth to introduce his prior convictions in the penalty phase cannot justify setting aside his conviction or sentence even assuming a discovery violation occurred.

## CONCLUSION

For the foregoing reasons, the judgment and sentence of the trial court is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Robert Chung-Hua Yang
Assistant Public Advocate
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Emily Lucas
Assistant Attorney General
Office of Criminal Appeals
Office of the Attorney General